Joseph Ogle *et al.*

*v.*

Gustavus A. Koerner *et al.*

*Filed at Mt. Vernon January 18, 1892.*

1. Redemption—*from foreclosure sale—by one primarily liable for mortgage debt—liability of property for unpaid balance of debt.* Where redemption is made from a sale under a decree of foreclosure of a mortgage, by one primarily liable on the mortgage debt, the same property may be resorted to again for the purpose of subjecting it to the payment of an unpaid balance due on the mortgage, but this is not because of any right to enforce the mortgage lien against the same property a second time. Where, however, the redemption is made by a party not liable upon the mortgage debt, the mortgage lien having been exhausted, the property can not be subjected a second time to the satisfaction of the same lien.

2. Same—*by assignee of holder of junior mortgage.* In all cases of sales of land under decrees of foreclosure, the statute gives to any defendant, his heirs, administrators or assigns, or any person interested in the premises through or under the defendant, the right to redeem the land sold, at any time within twelve months from the date of the sale, by paying the purchaser or the master the sum of money for which the land was bid off, and interest thereon. An assignee of a party holding a junior mortgage is a party interested, and has a right to redeem.

3. Where land is sold under a decree of foreclosure which finds the rights and priorities of the parties, the holder of a second mortgage lien, who is a party to the decree, or his assignee, may, within twelve months thereafter, redeem from such sale by paying to the master in chancery the amount bid at the sale, with interest, and by so doing he will be subrogated to the rights of the purchaser, and will take the land free from the lien of the senior mortgage.

4. Same—*effect of redemption by junior mortgagee.* By the redemption from a sale under a prior mortgage by the junior mortgagee, the sale becomes null and void; but upon familiar principles of equity the junior incumbrancer becomes subrogated to the rights of the purchaser, to the extent of having a first lien on the land redeemed, for reimbursement of the redemption money, and the prior lien being out of the way, the junior lien becomes subject only to such lien for the redemption money.

5. Same—*foreclosure sale—relations of holders of senior and junior mortgages.* The party redeeming does so for his own benefit, and the

holder of the senior mortgage, by having the property sold to pay his decree, becomes a stranger to the property, and is in no position to claim any advantage by the redemption. When the sale is legally made, the presumption, as between the senior and junior incumbrancers, is conclusive that the property has produced its entire value, and that value having once been applied to the senior mortgage the lien has accomplished its full purpose, and is thereafter *functus officio.*

6. Mortgage lien—*when exhausted.* A mortgage, or deed of trust in the nature of a mortgage, gives the party secured a lien upon the mortgaged premises which he may enforce by foreclosure and sale; but when such lien is once enforced by the sale of the property, it will, as to such property, have expended its force, and the property sold will be no longer subject to such lien.

7. Chancery practice—*dismissing cross-bill—right of complainant to dismiss bill.* After final decree dismissing a cross-bill, the case stands the same as though no cross-bill had been filed, and the complainant will have a right to dismiss his original bill at his own costs, and it will be error to refuse his motion to dismiss. If the order dismissing the cross-bill should be reversed, it may be that the order dismissing the original bill may be vacated.

Appeal from the Appellate Court for the Fourth District;— heard in that court on writ of error to the Circuit Court of St. Clair county; the Hon. B. R. Burroughs, Judge, presiding.

On the 6th day of February, 1890, Gustavus A. Koerner and Timothy McCarthy filed their bill in chancery, in the Circuit Court of St. Clair county, alleging, in substance, that, on the 13th day of October, 1886, Russell Hinckley was indebted to Benjamin Higgins, in the sum of $21,700; to Benjamin Smith in the sum of $12,728, and to Joseph Ogle in the sum of $20,000, and that being so indebted, he executed to each of his said creditors his two certain promissory notes, due in one and two years after date, for the amounts of his indebtedness to them respectively; that he was also indebted to Henry M. Needles, administrator *de bonis non* of the estate of John Short, deceased, in the sum of $10,000, and that on the same day he executed his promissory note for that amount, due two years after date; that to secure said notes to Ogle, Smith and Higgins, said Hinckley and wife, on the same day,

executed and delivered to said Koerner, as trustee, their five deeds of trust on lands in the counties of St. Clair, Marion, Clinton, Fayette and Wayne, the trust deed on lands in St. Clair county conveying certain lands in said bill particularly described; that also on said day, said Hinckley and wife, to secure said note to Needles, executed and delivered to Koerner, as trustee, five similar deeds of trust, on the same lands, the deeds of trust in favor of Needles being made second and subject to the lien of those in favor of Ogle, Smith and Higgins.

The bill further alleges, that, at the February term, 1888, of the Circuit Court of St. Clair county, said Koerner exhibited his bill in chancery to foreclose the deeds of trust given to secure the indebtedness to Ogle, Smith and Higgins, and that said Needles, as junior mortgagee, was made a party defendant to said bill; that such proceedings were had in said foreclosure suit, that a decree was entered finding the facts as to the indebtedness to Ogle, Smith and Higgins, and to Needles, and as to the execution of said several deeds of trust, as above stated, and also finding the amount due to said several creditors, the amount found due on the Needles note and trust deed being $5704.74; that said decree also found that, in June, 1887, said Hinckley and wife conveyed all of said lands, subject to the deeds of trust, to Willer H. Horner; also that Needles had assigned his note to certain parties, who, as the bill alleges, afterwards, and on the 6th day of August, 1889, assigned and transferred the same, with all their rights, claims, interest and equity of redemption thereunder to McCarthy, one of the present complainants.

It was further alleged that said decree ordered and adjudged that said deeds of trust be foreclosed and the lands thereby conveyed sold by the master in chancery, and that the proceeds, after paying costs and expenses, be applied to the payment of the indebtedness to Ogle, Smith and Higgins, and that the surplus, if any, should be applied to the indebtedness secured by said junior deeds of trust, and that the holders of

said junior deeds of trust have twelve months from the date of sale within which to redeem.

That in pursuance of said decree, said master sold said lands on the 17th and 18th days of September, 1888, and that at said sale, Andrew A. Miller bid off and purchased certain lands in St. Clair county, containing in all about 488 acres, for the sum of $2685, and received the master's certificate of sale therefor; that on the 26th day of August, 1889, said McCarthy, being the assignee of said junior deeds of trust, and of the promissory note thereby secured, redeemed said 488 acres of land from said sale to Miller, by paying to said master the sum of $2894.82, being the amount of Miller's bid with interest at the rate of eight per cent per annum from the date of sale, and that said master executed to said McCarthy a certificate of redemption therefor.

The bill further shows that the sum of $5714.74, found by said decree to be due on the Needles note, with interest thereon from the date of the decree, is still due and payable to said McCarthy, and that by reason of said redemption, said sum of $2894.82 and interest, as well as the amount due on said note and deed of trust, are subsisting and valid liens upon said 488 acres of land; that Hinckley has conveyed his equity of redemption in all of said lands to Horner and is insolvent; that all of the lands conveyed by said deeds of trust have been sold under said decree, the largest part in value having been bid in by Ogle, Smith and Higgins, but that sufficient was not realized therefrom to satisfy the first deeds of trust.

Said bill prayed that an account be taken of the amounts due said McCarthy, and that defendants Ogle, Smith, Higgins and Horner, or some of them, be decreed to pay said McCarthy the amount found due him, with costs and attorney's fees, by a short day to be appointed by the court, and that in default of such payment, said defendants, and all persons claiming by, through or under them, be forever barred and foreclosed

of all right and equity of redemption in or to said mortgaged premises or any part thereof.

Defendants Ogle, Smith and Higgins appeared and answered, and filed their cross-bill, in which, after alleging the indebtedness from Hinckley to them, the execution of Hinckley's promissory notes therefor and the execution by Hinckley and wife of the trust deeds securing the same; also the subsequent execution by Hinckley and wife of the deeds of trust to secure said note of $10,000 to Needles; also the foreclosure proceedings and decree and the sale thereunder; the assignment of the Needles note and deed of trust, through certain third parties, to McCarthy; the conveyance of all of said lands by Hinckley and wife to Horner; the payment by McCarthy to the master in chancery of $2894.82 in redemption of the 488 acres of land bid off by Miller and the execution by the master to McCarthy of said certificate of redemption, substantially as alleged in the original bill, they allege that, immediately after the execution of said certificate of redemption, McCarthy took possession of the lands so redeemed and has ever since had possession thereof, claiming the same by virtue of said proceedings; that the land so redeemed is worth at least $17,000, and that 200 acres of it are under cultivation and are of the annual rental value of $4 per acre, and that McCarthy is collecting the rents therefrom amounting to at least $800 annually; that the proceeds of the master's sale were not sufficient to pay the complainants in the cross-bill their respective claims, but that there is now due them the sum of $5000 which is a first lien on said 488 acres of land, subject, however, to the redemption money paid by McCarthy, less the amount received by him from rents and profits while in possession of said lands; that said Hinckley is insolvent, so that the complainants have no means of collecting from him the balance due them on said foreclosure decree; that they tender the amount of the redemption money paid as aforesaid, less the amount of said rents and profits, to said McCarthy.

Said cross-bill prays that an account be taken of the amount due McCarthy for the redemption money paid, deducting the amount received by him for rents and profits; that said 488 acres of land be sold by the master, and that out of the proceeds, after paying the costs of suit and the expenses of sale, the amount found due McCarthy for redemption money be first paid; next the balance due the complainants in the cross-bill, and next the amount found due McCarthy on the claim assigned to him, and that the residue, if any, be brought into court to await the further order thereof.

To said cross-bill McCarthy demurred for want of equity, which demurrer was sustained by the court, and thereupon a decree was entered dismissing the cross-bill at the costs of the complainants therein. McCarthy and Koerner thereupon asked leave to dismiss their original bill, which leave was granted, and said bill was dismissed on their motion.

Said decree being taken to the Appellate Court, Ogle, Smith and Higgins assigned for error the sustaining of the demurrer to the cross-bill and the dismissing of said bill at their costs, and also the dismissing of the original bill without the consent of the complainants in the cross-bill. The Appellate Court overruled said assignments of error and affirmed the decree, and the record is now brought to this court on appeal from said judgment of affirmance.

Mr. WILLIAM WINKELMAN, for the appellants:

The redemption by McCarthy is not a statutory redemption, and confers no statutory rights, for the reason that no person is permitted to redeem from his own sale. *Launat* v. *Slatton,* 6 Sawyer, 339; *McCullough* v. *Rose,* 4 Bradw. 152; *Hayden* v. *Smith,* 58 Iowa, 285; *Johnson* v. *Johnson,* Walker's Ch. 330; *Bodine* v. *Moore,* 18 N. Y. 347; *Teal* v. *Hinchman,* 69 Ind. 385; *Greene* v. *Doane,* 57 id. 186; *Smith* v. *Moore,* 73 id. 388; *Spurgeon* v. *Adamson,* 62 Iowa, 664; *Bradley* v. *Snyder,* 14 Ill. 263.

Mr. Charles P. Knispel, for the appellees:

A foreclosure sale discharges the mortgage lien. *Smith* v. *Smith*, 32 Ill. 198; *Rains* v. *Mann*, 68 id. 264; *Robins* v. *Swain*, id. 197; *Finley* v. *Thayer*, 42 id. 350.

The question of the right of redemption by McCarthy, and that he was compelled to redeem from the sale, only, and not from the prior mortgage, under the statute of this State, has been conclusively settled by our Supreme Court in the following cases: *Lloyd* v. *Karnes*, 45 Ill. 62; *Flachs* v. *Kelly*, 30 id. 462; *Seligman* v. *Laubheimer*, 58 id. 124; *Lamb* v. *Richards*, 43 id. 312; *Morse* v. *Smith*, 83 id. 396.

And also in States having a statute similar to our own. *Day* v. *Cole*, 44 Iowa, 452; 2 Jones on Mortgages, sec. 1070; *Tuttle* v. *Dewey*, 44 Iowa, 306.

The case of *Bradley* v. *Snyder*, 14 Ill. 263, cited by plaintiffs, is not applicable to the case at bar, as expressly held in *Seligman* v. *Laubheimer*, *supra*, *Lloyd* v. *Karnes*, *supra*, and other cases.

In the case of express mortgages the doctrine is well established that a sale of the mortgaged premises, in pursuance of a decree of foreclosure, passes to the purchaser at such sale all the title and interest of both mortgagor and mortgagee in and to the property sold. *Lansing* v. *Goelett*, 9 Cow. 346; *Holden* v. *Sackett*, 12 Abb. Pr. 473; *Pierce* v. *Potter*, 7 Watts, 477; *West Branch Bank* v. *Chester*, 1 Jones, (11 Pa. St.) 282; *Berger* v. *Heister*, 6 Watts, 214; *McCall* v. *Lennox*, 9 S. & R. 302; *Packer* v. *Railroad Co.* 17 N. Y. 287; *Tallman* v. *Ely*, 6 Wis. 244; *Hudson* v. *Treat*, 7 id. 263; *Ritger* v. *Parker*, 8 Cush. 145; *Brown* v. *Tyler*, 8 Gray, 135; *Marston* v. *Marston*, 45 Md. 412; *Stark* v. *Mercer*, 3 How. 377; *Carter* v. *Walker*, 2 Ohio St. 339.

The purchaser at the master's sale, therefore, under the established doctrine, took the land discharged of the lien for the balance of the amount found due by the decree remaining unpaid after the application of the proceeds of sale.

The demand by appellants that the land in question shall again be sold, in manner and form, and for the uses and purposes set out in the cross-bill, is manifestly unjust, and contrary to all principles of law and equity.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

If it be assumed that the cross-bill in this case was properly dismissed, the court committed no error in allowing the complainants in the original bill to dismiss their bill on their own motion and at their own costs. It is true the statute provides that no complainant shall be allowed to dismiss his bill after a cross-bill has been filed, without the consent of the defendant, but after a final decree dismissing the cross-bill, the case, so far as the original bill is concerned, stands precisely as though no cross-bill had been filed. The complainants are then at liberty to dismiss their bill, and it would be error for the court to deny their motion to dismiss. *Reilly* v. *Reilly,* 139 Ill. 180. It may be, if this court should be of the opinion that the cross-bill in this case was improperly dismissed, and should reverse the decree in that respect, so as to re-instate the cross-bill, that the complainants in that bill would have a right to insist upon the vacation of the order dismissing the original bill, so as to restore the case upon both bills to the position in which it stood before the commission of the error. But until it is found that the cross-bill is improperly dismissed, the order dismissing the original bill can not be disturbed.

The only substantial question presented by the assignment of errors then is, as to the propriety of the decision of the court sustaining the demurrer to the cross-bill. The theory of that bill seems to be, that the redemption by McCarthy, the assignee of the junior mortgage, of the 488 acres of land in question from the sale under the decree foreclosing the senior mortgage, had the effect, not only of cancelling the sale, but

12—140 ILL.

of wiping out all its legal consequences, so as to subject said land again to the lien of the senior mortgage, and thus enable the holders of that mortgage to satisfy the unpaid balance of their incumbrance in preference to the junior mortgage.

In support of their contention, the complainants in the cross-bill seek to invoke those principles which apply to equitable redemptions, and which require the party seeking to redeem to pay the entire incumbrance from which redemption is sought. Doubtless if McCarthy were in a court of equity praying to be permitted to redeem from a prior incumbrance, relief would be granted him only upon payment of the entire incumbrance. Thus, if neither he nor any person to whom he sustains the relation of privity had been made a party to the foreclosure suit, and he, after the statutory period of redemption from the foreclosure sale had expired, had filed his bill to redeem, he would have been required to redeem from the mortgage and not merely from the sale. He would in that case have been required to pay not merely the amount bid for the land and interest but the balance which the sale left unsatisfied.

That the principles applicable to equitable redemptions do not apply is obvious from a variety of reasons. In the first place, McCarthy, so far as his relation to the cross-bill is concerned at least, is not a suitor in a court of equity asking relief of any kind, but is only a defendant seeking to contest the equities attempted to be enforced by the complainants in that bill. Again, McCarthy is not asking to be allowed to redeem, even by the original bill. The redemption is a fact already accomplished, and he is only seeking to enforce equities to which he became entitled by having redeemed. Thirdly, McCarthy's redemption of said land not only professed to be but in fact was a statutory redemption from the foreclosure sale, and entitled him to all those rights, both legal and equitable, which the statute gives in case of such redemption.

In all cases of sales of land under foreclosure decrees, the statute gives to any defendant, his heirs, administrators or assigns, or any person interested in the premises through or under the defendant, the right to redeem the land sold, at any time within twelve months from the date of the sale, by paying the purchaser or the master the sum of money for which the land was bid off, and interest thereon from the date of sale at the rate of eight per cent per annum. R. S. 1874, chap. 77, sec. 18. Needles, the junior mortgagee, was made a defendant to the foreclosure suit, and McCarthy afterwards became interested in the mortgaged premises under Needles, by assignment to him of the junior mortgage and the indebtedness thereby secured. He therefore was a party who, under the statute, was entitled to redeem from the sale, and the admission of the cross-bill is that he did so redeem, by paying to the master the sum for which the land in question was sold with interest. The redemption therefore was unquestionably statutory, and whatever may be the rules applicable to equitable redemptions, the only question here is, as to the rights, as against the senior mortgagee, which a junior mortgagee acquires by a statutory redemption from a sale under the senior mortgage.

A mortgage, or as in this case, a deed of trust in the nature of a mortgage, vests in the party secured a lien upon the mortgaged premises. By virtue of that lien the mortgagee is entitled to have the mortgaged property sold under a decree of foreclosure and the proceeds of the sale applied to the payment of the debt secured. This is the mode provided by law for the enforcement of the lien, and when the lien has been once enforced by the sale of the property, it has, as to such property, expended its force and accomplished its purpose, and the property is no longer subject to it.

When the redemption is made by a party primarily liable on the mortgage debt, it may be that the same property may be resorted to again for the purpose of subjecting it to the

payment of an unpaid balance due on the mortgage, but that is not because of any right to enforce the mortgage lien against the same property a second time, but because of the rule of law which subjects all the property of a debtor to the payment of his debts until they are satisfied in full. But where the redemption is made by a party not liable upon the mortgage debt, the mortgage lien having been exhausted, the property can not be subjected a second time to the satisfaction of the same lien. The party redeeming does so for his own benefit, and the holders of the senior mortgage having, by the sale, become entire strangers to the property, are in no position to derive any advantage from the redemption. The sale having been made at public auction, and in the manner prescribed by the statute, the presumption, as between the senior and junior incumbrancers, is a conclusive one, that the property has produced its entire value, and that value having been once applied to the senior mortgage, the lien has accomplished its full purpose and is thereafter *functus officio.*

It is idle for the senior mortgagee to urge that the property redeemed is in fact worth much more than the price for which it was sold at the foreclosure sale. He was a competent bidder at such sale, and therefore had it in his power to bid the property up to its fair cash value, and if he failed to do so, a presumption arises from which he can not escape, that the property sold for what it was reasonably worth. At any rate, the mortgagee under whose decree the mortgaged property is sold, in the absence of all irregularity and unfairness in the sale, must be conclusively held to the price bid, as a full equivalent for and satisfaction of his lien, and having received the proceeds of the sale, he becomes a mere stranger to the property.

It follows from what we have said, that McCarthy redeemed the land in question free from the lien of the senior deed of trust. By the redemption, the sale and certificate, as the statute declares, became null and void, but upon familiar

principles of equity, McCarthy became subrogated to the rights of the purchaser to the extent of having a first lien on the land redeemed for reimbursement of the redemption money. The prior deed of trust being out of the way, the junior deed of trust became subject only to McCarthy's lien for the redemption money.

The view we have taken is supported by the case of *Seligman* v. *Laubheimer,* 58 Ill. 124. In that case the land in controversy was subject to a senior and a junior mortgage, and a decree of foreclosure was rendered finding the amounts due on both mortgages, and declaring one to be a first and the other a second lien. Under the decree the land was sold for a sum less than sufficient to pay the amount of the first mortgage. Before the expiration of twelve months from the sale, the junior mortgagee redeemed. On application of the senior mortgagee to have the balance due him ascertained and declared to be a still subsisting lien on the mortgaged property and for a resale of the property, it was held that the lien of the first mortgage was extinguished, and that the junior mortgagee redeeming under the statute, took the land free from the lien of the first mortgage. The following was a portion of the reasoning upon which the decision was based:

"What was the effect of the redemption? The second mortgagee, who redeemed from the sale, was the grantee of the mortgagors. By the express provision of the statute, he had the right to redeem the lands, by the payment of the amount bid by the plaintiff in error. If he had filed a bill in chancery to redeem, he would then be compelled to do equity, by the payment of the prior mortgage debt, before he could obtain relief. But this redemption was a statutory right. Upon the payment of the amount bid, with interest, the original certificate of purchase was null and void. The equity of redemption established by the courts, is entirely different from the statutory right. The one is governed by the principles of equity jurisprudence; the other is controlled, in its operation and

effect, entirely by the statute. In the enforcement of the one right, the party must pay all that is equitably due; in the other he need only comply with the statute."

Some decisions are cited from other States in relation to redemptions from foreclosure sales, but the statutes of the States where those decisions were made were essentially different from ours, and the cases cited are therefore of little weight as authority here. We are of the opinion that the rule laid down in *Seligman* v. *Laubheimer, supra,* is entirely sound, and that it must control in the present case.

No other question is presented which is not substantially disposed of by what has already been said. The cross-bill showed no equity, and the demurrer thereto was properly sustained.

The judgment of the Appellate Court affirming the decree of the Circuit Court will be affirmed.

*Judgment affirmed.*