Charles Bogardus

*v.*

Horace W. Moses.

*Opinion filed October 19, 1899.*

1. Receivers—*when receiver for rents and profits should be discharged.* A receiver of rents and profits of mortgaged premises, appointed pending foreclosure, should be discharged after sale of the premises for the full amount of the debt, interest and costs, and the possession of the property should be restored to the owner of the equity.

2. Same—*when mortgagor cannot have receivership continued as against his grantee.* That a mortgagor who had transferred the property agreed to pay the mortgagee the over-due interest and costs, in consideration of which the mortgagee bid the full amount of the debt, interest and costs on foreclosure sale, does not entitle the mortgagor, as against the owner of the equity of redemption, to the continuation of a receivership to enable the mortgagor to collect, out of rents and profits, the amount he had so agreed to pay.

3. Same—*receivership should not be continued to enable receiver to pay future taxes.* A receiver of the rents and profits of mortgaged premises will not be retained in office after their sale simply to pay a tax, which the owner of the equity of redemption is not legally bound to pay until after the expiration of the time of redemption.

4. SAME—*when receiver's discharge without direction to pay costs is not error.* A receiver's discharge without a direction that he pay costs alleged to have been incurred in the matter of his appointment will not be deemed error when there is nothing in the record to show that the costs so incurred were not paid.

*Bogardus* v. *Moses*, 78 Ill. App. 223, affirmed.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Ford county; the Hon. JOHN H. MOFFETT, Judge, presiding.

This is a writ of error, sued out from this court to review a judgment of the Appellate Court, affirming an order of the circuit court, discharging a receiver, who had been appointed in a foreclosure proceeding.

The bill was filed on April 26, 1897, by Annie N. Carter to foreclose a mortgage, dated March 9, 1891, and executed by Charles Bogardus and Hannah W. Bogardus, his wife, upon a certain lot in Paxton, upon which there was a building, to secure a bond for $8000.00, due March 15, 1897, and twelve interest notes of $240.00 each, executed by the said Bogardus and wife to Henry E. Carter, who subsequently assigned the bond, notes, and mortgage to Annie N. Carter. Afterwards Charles and Hannah W. Bogardus conveyed the premises to Dunham & Fisher, subject to the lien of the mortgage. Dunham & Fisher afterwards executed a quit-claim of the premises to the defendant in error, Horace W. Moses. Bogardus and his wife, and Moses, and certain other persons, occupying the premises as tenants of Moses, were made defendants to the bill. The bill was answered by Moses and certain of the other defendants, who were occupants of the premises. On August 6, 1897, the complainant in the bill, Annie N. Carter, filed her petition asking for the appointment of a receiver, in which petition the plaintiff in error, Charles Bogardus and his wife, Hannah, subsequently asked leave to join. Moses answered the petition, and

opposed the appointment of a receiver. Pending the application for a receiver, and on August 20, 1897, the court rendered a foreclosure decree for $8711.34, principal and interest, and in addition thereto $103.50 for attorney's fees and costs. On August 26, 1897, after the decree of sale was entered, the court appointed one Harry B. Henderson as receiver. On October 18, 1897, the master sold the premises to the complainant, Annie N. Carter, for $9055.92, the amount of the decree, interest and costs. On December 29, 1897, the master made his report of sale.

The decree of sale provided that, in default of the premises selling for the amount of the decree, execution should issue against Charles Bogardus, the plaintiff in error, and Hannah W. Bogardus for the deficiency. The mortgage conveyed the real estate described therein "together with all the rents, issues, and profits thereof;" the mortgagors therein agreed to pay all the taxes and assessments on the premises, and, in default of such payment, the mortgagee had the option to declare the amount of the debt due, and to foreclose the mortgage, and enter into possession of the premises, and receive all the rents, issues, and profits thereof. The mortgage also provided that, upon the maturity of the indebtedness thereby secured, a receiver might be appointed to take possession of the premises and collect the rents thereof.

On December 20, 1897, the plaintiff in error, Charles Bogardus, filed a petition in the case praying for an order upon the receiver to redeem from a tax sale of the premises for the taxes of 1896, which had theretofore taken place, and to pay certain other taxes for necessary repairs upon the premises. This petition set forth the provisions of the mortgage; that the premises had been sold at the master's sale; and that the plaintiff in error, Charles Bogardus, had made an agreement with the complainant, Annie N. Carter, by the terms of which plaintiff in error was to pay her $1065.99, being the amount of the over-due interest on the mortgage and the costs, and to

remain liable for $8000.00 of principal with interest according to the terms of the bond, unless the premises should be redeemed.

On January 4, 1898, the receiver filed his report, in which he showed that he had paid the insurance upon the premises; had redeemed them from tax sale; had paid a sidewalk tax, mentioned in the petition, from rents collected by him; and had a balance on hand of $9.09. On the same date, January 4, 1898, the defendant in error, Moses, filed his answer to the petition of Bogardus, alleging that the property had been redeemed from tax sale, that the cost of constructing the sidewalk had been paid, that the property had been sold at the master's sale for the debt, interest, and costs, and that he would make the necessary repairs without delay; and denied the right of Bogardus to have the receiver pay the special paving tax or subsequent taxes on the property; and also denied the right of the petitioner to have the receiver continued, and asked that he be required to turn over the money on hand to Moses, and be discharged. Exceptions were filed to this answer, which were over- ruled; to which order, overruling his exceptions, Bogardus excepted, and prayed an appeal. The court, thereupon, entered an order, finding that the petitioner was not entitled to have the receiver pay the taxes for the year 1897, or the special pavement tax, and ordering that the petition be dismissed, and that the plaintiff in error, the petitioner here, pay $2.00 of the costs on said petition, and the defendant Moses should pay the balance of the costs, and that the receiver should pay the balance in his hands to the defendant in error, Moses. On January 15, 1898, the court, upon the motion of the defendant in error, Moses, after refusing to grant the continuance of said motion upon the application of the plaintiff in error, Bogardus, supported by an affidavit, entered an order discharging the receiver upon his assignment of the insurance policies as directed in the decree. The plaintiff

in error took an appeal from the order discharging the receiver.

On February 12, 1898, the plaintiff in error presented his bill of exceptions to the court below, which sets forth the affidavit of E. C. Gray, attorney of Bogardus, for a continuance of the motion to discharge the receiver. The bill of exceptions recites that exception was taken to the action of the court in overruling the motion of continuance, and also that no oral evidence was offered by either party, but that the matter of the discharge of the receiver was considered upon the original petition of the receiver, and all the proceedings had after the sale.

WALTER WARDER, and GRAY & BEACH, for plaintiff in error.

CLOUD & KERR, for defendant in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The only question in this case is, whether the order discharging the receiver was properly entered by the court below. Although the application for the appointment of the receiver was made before the decree of sale was entered, his appointment was not actually made until after the decree of sale was entered. When the sale took place under the decree of foreclosure, the property was bid in by the complainant in the bill for the amount of the decree and interest and costs. Under the doctrine laid down in *Davis* v. *Dale*, 150 Ill. 239, it would seem to follow, that the receiver should have been discharged as a matter of course. In *Davis* v. *Dale, supra*, we held, that the grantor in a mortgage or deed of trust, or the owner of the equity of redemption, is entitled to the possession of the premises, and to receive the rents, issues and profits thereof after the sale and until the time of redemption expires; and we there said: "And it follows necessarily, that where the property is bid off at the foreclosure sale

for the full amount of the decree, interest, and costs, as was here done, the necessity for continuing the receiver ceases, and he should be discharged, and the possession restored to the owner of the equity of redemption." This is true, as well when the purchaser at the sale is the holder of the secured indebtedness, as when such purchaser is a stranger and outsider. In such case, when the lien of the mortgage has been enforced by the sale of the property, and such sale has realized the whole amount of the debt, interest, and costs which are due, the mortgage has expended its force, and the property is no longer subject to its provisions. (*Ogle* v. *Koerner*, 140 Ill. 170; *Seligman* v. *Laubheimer*, 58 id. 124; *Davis* v. *Dale*, *supra*).

Counsel for plaintiff in error seem to claim, that the receiver should have been continued, in order to raise money enough out of the rents collected by him to pay plaintiff in error what, according to the allegations in the petition filed by him on December 20, 1897, he agreed to pay to the complainant in the foreclosure proceeding. Plaintiff in error alleged in his petition, that the complainant would not have bid the full amount of the debt, interest and costs, if plaintiff in error had not agreed to pay the over-due interest and costs, amounting to $1065.99, and interest on the principal of the encumbrance in case the premises should not be redeemed. It is argued that plaintiff in error became thereby subrogated to the rights of the mortgagee, and by reason thereof, was entitled to continue the receivership.

In the first place, no evidence whatever was introduced to prove that any such agreement, as is set up in the petition, was made. If it were true, however, that the plaintiff in error agreed to pay the complainant in the foreclosure proceeding a part of the amount due by the terms of the foreclosure decree, this would not have entitled him to a continuance of the receiver as against the defendant in error, Moses, who was owner of the equity

of redemption. Whatever part of the decree plaintiff in error may have paid to the complainant to induce her to bid the full amount of the decree, and thus prevent a judgment against himself for the deficiency, he would get back in case of the redemption of the premises from sale by defendant in error, Moses. In case the premises should not be redeemed, he would be entitled, under the agreement alleged, to an interest in the title acquired by purchase at the master's sale. Defendant in error, Moses, was not a party to the agreement in question, and whether the plaintiff in error was subrogated in whole, or in part, to the rights of the mortgagee, the rights of Moses, defendant in error, would remain the same. The right of subrogation, if it existed, could confer no greater rights upon the plaintiff in error than were possessed already by the mortgagee, who was the complainant in the decree; and the mortgagee, whether she owned the whole decree, or transferred a part of it to the plaintiff in error, would not be entitled to a continuance of the receiver after the sale of the property for the whole amount of the debt, interest and costs.

It may have been otherwise, if the property had not been sold for the whole amount of the debt, interest and costs, and if there had been a deficiency for which the plaintiff in error was personally liable. In *Haas* v. *Chicago Building Society*, 89 Ill. 498, it was held, that, under certain circumstances, a receiver to collect the rents and profits of mortgaged premises may be appointed after the final decree of foreclosure and sale. But, in that case, the premises were sold for less than the amount due by the terms of the decree of foreclosure, and there was a deficiency of more than $9000.00; and we there said (p. 506): "If there had been no deficiency, those rents would have belonged to the owner of the equity of redemption. But the mortgagee had an equitable right to such rents to pay the deficiency, which right could only be enforced by an application to the court to appoint a receiver."

So, also, in *Oakford* v. *Robinson*, 48 Ill. App. 270, where, as here, the rents and profits of the land, as well as the land itself, were pledged by the mortgage for the security of the debt, and where a receiver was appointed after the entry of the decree of foreclosure, it appeared that the property was sold at the master's sale for less than the amount of the debt, interest and costs due under the decree, so that there was a deficiency; and it was there held, that, by the appointment of a receiver, an equitable lien was acquired on the rents and profits of the land during the statutory period allowed for redemption for the payment of the deficiency. (2 Jones on Mortgages,— 5th ed.—sec. 1531 *a*). In the case at bar, however, there was no deficiency as the result of the sale, and consequently the doctrine of the case of *Davis* v. *Dale, supra*, is precisely applicable.

The plaintiff in error, in the petition filed by him on December 20, 1897, stated that a special tax had been levied by the city of Paxton upon the mortgaged premises for the purpose of paving a street in that city; and that this special tax was confirmed on August 5, 1897, and was for $157.20 with interest at six per cent from that date, the "tax to be paid as follows: $45.80 on or before two years; $55.70 on or before three years; $55.70 on or before four years." We do not find any testimony in the bill of exceptions, or in the record anywhere, establishing the existence of this tax. Counsel for plaintiff in error insist, that the receiver should have been retained until this special tax was paid off out of the rents of the property. We are not concerned with the question, whether or not this special tax, as set up in the petition, was payable in such installments as were required under existing statutes. No such question is here raised, and need not be determined. If, however, the tax was valid and payable in proper amounts and at proper times, the first installment was due on or before August 5, 1899. The time of redemption from the master's sale expired

on January 18, 1899. While it may be true that the defendant in error, Moses, the owner of the equity of redemption, would have been allowed to pay off the whole of the special tax in question at once, yet he was not legally bound to pay the same until long after the expiration of the period of redemption. It was not necessary to retain the receiver in office to pay a tax, which the owner of the equity of redemption was not legally bound to pay until after the expiration of the time of redemption. The object of appointing a receiver at the instance of a mortgagee is to preserve the security of the mortgage and apply the rents, when necessary, in the discharge of the indebtedness. The indebtedness, however, must be an existing indebtedness, which the mortgagor is liable to pay during the running of the period of redemption, and which he neglects to pay. "This right to have a receiver of the rents appointed pending the litigation depends upon the general principle of equity, that the purpose of such an appointment is to preserve the property, so that it may be appropriated to satisfying the decree of court." (2 Jones on Mortgages, sec. 1516). The special tax in question was not a part of the decree. Neither the complainant in the foreclosure suit, Annie N. Carter, nor the plaintiff in error, paid the tax, or caused it to be entered up as part of the decree. The complainant in the bill had the privilege of paying the tax after the sale was made, and then, under the act of 1889, the party entitled to redeem would have been obliged to pay to the holder of the certificate of sale the amount of the tax with interest at the rate of six per cent per annum, by proceeding as required by section 27*a* of the act in regard to judgments, etc. (Hurd's Stat. 1897, p. 981). Payment of the tax, however, was not made by the complainant after the sale. If such payment had been made, it could have been recovered back in case of redemption, but, in case no redemption took place, the payment would have inured to the benefit of the purchaser. The ques-

tion, however, is not whether the receiver should have been retained to raise money to pay the tax if the mortgagor had been bound to pay it during the running of the time of redemption. Inasmuch as the tax was not necessarily due during that time, we are of the opinion that the court was not obliged to continue the receivership.

It is, also, claimed by plaintiff in error that the court erred in not directing the receiver to pay out $9.65 on account of court costs incurred in the matter of the appointment of the receiver. Of course, the general rule is that the costs of the appointment of a receiver are entitled to priority of payment out of the funds realized by him. (High on Receivers,—3d ed.—sec. 809). But there is nothing in this record to show that all the costs, which were incurred in the matter of the appointment of the receiver, were not paid. A fee bill has been fastened into the record in this case, but is, in fact, no part of the record. If, however, it can be regarded as being a part of the record, it purports on its face to be a bill of fees incurred at the December term, 1897, and, so, evidently refers to costs incurred upon and under the petition filed by the plaintiff in error on December 20, 1897. The court ordered these costs to be paid, part thereof by plaintiff in error and part by defendant in error. No objection is made to this part of the court's order, nor is it claimed that either of the parties hereto is pecuniarily irresponsible. The receiver here is not complaining about his costs. Moreover, the question of these costs does not appear to have been raised in the circuit court, and the fee bill is not made a part of the record by the certificate of evidence. In the petition filed by plaintiff in error on December 20, 1897, praying for an order upon the receiver to make certain payments specifically named, the payment of the costs here referred to was not mentioned. We are unable to see that the court committed any error in discharging the receiver without requiring him to retain this amount in payment of his own costs.

None of the reasons, urged by the counsel for the plaintiff in error against the action of the court below in discharging the receiver, are sufficient, under the circumstances detailed in this record, to justify us in holding that the court below committed error. Accordingly, the order of the circuit court, discharging the receiver, is affirmed.                *Order affirmed.*