## DIKEMAN v. JEWEL GOLD MINING CO.

Third Division. Valdez. December 22, 1925.

No. 299–A.

1. **Mines and Minerals** ⬥117—**Judicial Sales—One Foreclosure Sale under Miner's Lien Exhausts the Effect of the Decretal Order.**

The Jewel Gold Mining Company leased its mining claims to the Jewel Mining Syndicate, but did not file notice of nonliability to lien claims. Plaintiffs sued to foreclose several miners' liens claimed under the territorial law of 1915 upon the mining claims of the Jewel Gold Mining Company to the Syndicate, which latter company employed the miners who filed the liens. Judgment of foreclosure of the liens was entered by the court upon the entire mining property, and personal judgment against the Syndicate which had employed the men. Sale of the mining claims was made, for less than the judgment, and a deficiency judgment was docketed against the Syndicate. The sale was not confirmed, and the Syndicate redeemed from the sale. The plaintiffs accepted the money on redemption, and thereafter issued what was called an "alias execution," directing a resale of the same mining claims described in the liens and judgment. Sale was made, and confirmation moved for, but denied for irregularities. Plaintiffs now move for an order directing sale under the second subdivision of section 1115 of the Alaska Code, which provides that, when confirmation of sale is refused, the court shall order the property

⬥See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

resold. *Held*, there can be but one foreclosure sale; that exhausts the effect of the decretal order of sale.

2. Mines and Minerals ⟨key⟩117—Judgment in Foreclosure of Miner's Liens—One Sale Exhausts the Lien.

Neither the lien law nor the foreclosure law contemplates more than one foreclosure sale under a lien. After a foreclosure sale, if a deficiency remains, a judgment may be docketed for the amount, and general executions issued as long as property of the judgment debtor can be found to levy upon.

3. Mines and Minerals ⟨key⟩117—Judgment for Deficiency under Miner's Lien Laws.

The interest of the Jewel Gold Mining Company could be sold only under the foreclosure decree, and no deficiency judgment could be entered against it, because it was not personally liable for the debt. Therefore any general execution for the deficiency can be levied only against the leasehold of the Jewel Mining Syndicate and other property of the Syndicate.

Plaintiffs sued to foreclose several miners' liens claimed under the territorial law of 1915 upon mining property owned by the Jewel Gold Mining Company, and leased from it by the Jewel Mining Syndicate. The Jewel Gold Mining Company had not filed notice of nonliability, and the entire property was charged by the liens with the miners' wages asserted to be due. Judgment of foreclosure of the liens was entered by the court upon the entire mining property, and personal judgment against the Syndicate, which had employed the men. Sale of the property was made under decretal order, for less than the amount of the judgment, and a deficiency judgment was docketed against the Jewel Mining Syndicate. The sale was never confirmed, and soon afterward the Syndicate redeemed from the sale. Plaintiffs accepted the money. Thereafter plaintiffs caused what they denominated an "alias execution" to be issued by the deputy clerk of the court at Anchorage, directing a resale of all the property described in the liens and judgment. All subsequent controversies in the case arise from this "alias execution." It directed the marshal to sell the property described in the judgment and apply the proceeds as ordered in the judgment. Sale was made, and confirmation of the sale moved for. The motion was denied, and the sale was set aside because of sundry irregularities. Plaintiffs now come in and move for an order directing that the property be sold as pro-

⟨key⟩See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

vided in the second subdivision of section 1115 of the Code. This section provides that, when confirmation of a sale is refused, the court shall order the property to be resold.

In this case, however, the judicial sale has not been set aside nor confirmed. Neither action has been asked. The property was redeemed from the sale, and plaintiffs accepted the money and caused the "alias execution" to issue. The sale made under it was set aside because the court held the proceeding to be fatally defective in several ways. Without reviewing those defects, it is only necessary to say now that the alias execution was in form an order for another judicial sale, when it should have been a general execution under the deficiency judgment docketed against the Syndicate.

Arthur Frame and J. S. Truitt, both of Anchorage, for plaintiffs.

W. H. Rager, of Anchorage, for defendants.

RITCHIE, District Judge. I am unable to find any warrant of law for this "alias execution." The theory of plaintiffs' counsel is that, when the Jewel Syndicate redeemed the property from the judicial sale, the original status of all parties was reinvested. If the property had been wholly owned by the Syndicate, this would have been true. The Oregon Supreme Court, construing the Code of that state, from which the Alaska Code is taken, has held that, when a judgment debtor redeems from an execution sale of real estate, the property becomes subject to a general execution pursuant to the same judgment, if it was not fully satisfied by the first sale. The reason for this is plain. All property of the judgment debtor is subject to execution to pay any judgments he may owe, and there is no reason for exempting property that has been once sold. But in any case the property is sold under a general execution issued against all the debtor's property. All the Oregon decisions cited herein were in cases of executions issued on deficiency judgments.

Plaintiffs proceeded upon a different theory. Their notion was that, as their judgment contained an order of sale, they might sell under that order of sale as often as the Syndicate had any interest in the property. This conception seems to me altogether wrong. According to the weight of authority there

can be but one foreclosure sale. That exhausts the effect of the decretal order of sale. If a deficiency judgment is docketed, executions can be issued without limit as to number. On this point Judge Wolverton said in Flanders v. Aumack, 32 Or. 19, 29, 51 P. 447, 450 (67 Am. St. Rep. 504):

"A mortgage is a specific lien, which attaches by virtue of the contract of the parties concerned; but the lien of a judgment is general, and attaches by operation of law, as a sequence of its rendition. Foreclosure is a remedy by which the property covered by the mortgage may be subjected to sale for the payment of the demand for which the mortgage stands as security, and, when the decree is had and the property sold to satisfy it, the mortgagee has obtained all he contracted for; but, if there is also a personal decree against the mortgage debtor, this becomes, from the date of its docketing, a general lien upon his real property, as in case of a judgment; and, if a deficiency remains after the application of the proceeds of the sale of the lands covered by the mortgage, the decree may be enforced by execution, as in ordinary cases. Hill's Ann. Laws, par. 417, subd. 2. The resale does not take place under the order for the sale of the specific property covered by the mortgage lien, for that has been exhausted, but under the personal decree which remains as a deficiency decree against the mortgage debtor after the application of the proceeds arising under the order of sale; and a redemption will not reinstate the specific mortgage lien, while it will the general lien acquired by the personal decree. This distinction is clear, and is bottomed both upon principle and authority. The redemption is from the sale, and not from the mortgage."

A statutory lien for labor, like a mortgage, is based upon contract, and all that Judge Wolverton says of the effect of mortgage foreclosure must apply with equal force to foreclosure of such a lien. A deficiency judgment must be enforced by ordinary execution, not by resale on decree. Lauriat v. Stratton (C. C.) 11 F. 107; Hervey v. Krost, 116 Ind. 268, 19 N. E. 125; Ogle v. Koerner, 140 Ill. 170, 29 N. E. 563; Willis v. Miller, 23 Or. 352, 31 P. 827; Williams v. Wilson, 42 Or. 299, 70 P. 1031, 95 Am. St. Rep. 745. In the latter case Judge Wolverton quotes the extract from Flanders v. Aumack given above.

Plaintiffs' motion for a new order of sale makes a case of first impression. No case involving a similar state of facts can be found in the books, and therefore there are no precedents. This is due to the fact that the miners' lien law of Alaska and similar laws in several states are of recent enactment and create new situations. One instance is that the redemption

laws make no provision for a mine owner, whose property has become liable for a labor judgment without personal liability on the part of the owner. Redemption rights are given by statute in Alaska and in most of the states to the judgment debtor and his successor in interest, and to lien creditors. If miners' lien laws had antedated redemption laws, provision might have been made in the latter for lessors whose property might become liable for labor debts contracted by lessees, but there is none. What, then, is the status of the Jewel Gold Mining Company since the judicial sale and the redemption by the Syndicate? It did not and could not redeem. It had no personal liability under the judgment, and the liability of its property was cast upon the property by operation of law. All citations of redemption cases miss this point, because it was not involved in any of them. The liability of the reversionary interest of the Mining Company for the debt of the Syndicate, in which it had no contractual part, was impressed upon that interest by a special provision of law. It seems to me logical, therefore, that the Mining Company should benefit by any law giving relief to the Syndicate.

When the Syndicate redeemed from the judicial sale, did not the redemption operate also in behalf of the Mining Company? Why should the failure of the Syndicate to pay its debts cast liability upon the lessor's interest, and the Syndicate's redemption from the sale leave the lessor remediless in the premises? It is easy to answer: Because the law has made no provision for the Mining Company's plight. That is not a fair answer to my mind. The Syndicate's dereliction involved the Mining Company's property. Its default caused the sale of the whole property. Why should not its redemption redeem the whole property from the sale? It seem to me that was the legal and equitable effect.

Two questions are raised by the motion for a new order of sale: First. Can the court direct a second order after the first has been fully carried out and the property redeemed? Second. Can the interest of the Mining Company be sold a second time? Both questions have been discussed, and I think answered, in this opinion; but, to summarize briefly, I will say it is my view:

1. Neither the lien law nor the foreclosure law contemplates more than one foreclosure sale under a lien. After a fore-

closure sale, if a deficiency remains, a judgment may be docketed for the amount, and general executions issued as long as property of the judgment debtor can be found to levy upon. Chapter 42, Alaska Code.

2. The interest of the Jewel Gold Mining Company could be sold only under the foreclosure decree, and no deficiency judgment could be entered against it, because it was not personally liable for the debt. Therefore any general execution for the deficiency can be levied only against the leasehold of the Jewel Mining Syndicate and other property of the Syndicate.

The motion for a second judicial sale is denied.