Chicago Title and Trust Company, Plaintiff, v. Joseph Wolchinovesky et al., Defendants.
Abigail Gillmer, Appellee, v. Harry Cohen, Appellant.

Gen. No. 42,761.

Heard in the third division of
this court for the first district at the October term, 1943.
Opinion filed May 18, 1945. Released for publication June 8, 1945.

H. J. ROSENBERG, IRVING S. BERMAN and SAMUEL B.
BARNETT, all of Chicago, for appellant; ABRAHAM
MILLER, of Chicago, of counsel.

MAURICE H. KAMM and MAURICE L. DAVIS, both of
Chicago, for appellee; MAURICE L. DAVIS, of Chicago,
of counsel.

MR. JUSTICE LUPE delivered the opinion of the court.
This is an appeal by Harry Cohen, counterclaimant,
from an order striking his answer and counterclaim
and dismissing the same for want of equity.

A decree of foreclosure and sale was entered in this
cause on June 26, 1937. This decree found that there
was due to complainant Chicago Title & Trust Company, a corporation, as successor trustee, from defendant Joseph Wolchinovesky the aggregate sum of
$493,100.11, and ordered the sale of the premises in the

event said amount had not been paid. The same not having been paid, a sale was had and on June 17, 1942 an order was entered approving the sale pursuant to said decree. On September 24, 1942, the master's report of distribution was approved by the court and a deficiency decree entered against Becky Clemitz, as administratrix of the estate of Joseph Wolchinovesky, deceased, in the sum of $557,880.21. In this order the court reserved jurisdiction of the matters which were reserved by the decree of June 26, 1937, wherein the court reserved jurisdiction to enter such orders not inconsistent with the decree as might seem necessary or proper to execute or enforce the terms of the decree, and to enter a personal decree against Joseph Wolchinovesky for any deficiency on the sale. The order entering the deficiency was declared by the decree to be a lien upon the rents, issues and profits from the premises foreclosed upon, during the statutory period of redemption. The record discloses an order was entered on June 27, 1936, that all further proceedings in the cause hereafter be governed by the provisions of the Civil Practice Act.

On December 15, 1941, Abigail Gillmer filed her suit in the superior court of Cook county for a strict foreclosure of a second mortgage on the same premises; on March 17, 1942, a decree of strict foreclosure was entered, and on June 19, 1942, pursuant to said decree, a master's deed was issued, conveying title to the premises to Abigail Gillmer. On November 9, 1942, Abigail Gillmer redeemed from the first mortgage foreclosure sale. On January 8, 1943, Gillmer filed her petition in this cause alleging that she was the owner of the equity of redemption and had redeemed from the sale under the first mortgage foreclosure decree; that she was the owner of the premises subject only to the rights of the first mortgage bondholders who were entitled to receive the net income derived from the premises during the remaining portion of the

period of redemption. Gillmer requested the court for leave to deposit the sum of $6,500 with the complainant Chicago Title & Trust Company, successor trustee, in full for the net rents, issues and profits that might accrue from the premises during the remaining period of redemption, from February 1, 1943, to August 31, 1943, and that possession of the premises be delivered to her.

On January 15, 1943, Harry Cohen, the owner of three first mortgage bonds in the sum of $500 each, filed his answer and counterclaim to Gillmer's petition. The chancellor treated the counterclaim as an additional answer, so that the allegations of both of Harry Cohen's pleadings were treated as an answer by him to the petition of Gillmer. Counsel for Cohen contends that the chancellor held the proceedings herein were not governed by the Civil Practice Act and therefore no counterclaim could be maintained by Cohen. With this contention we cannot agree.

The written opinion of the chancellor was made part of the record in this case. We find upon an examination of the opinion the chancellor construing the applicable provision of the Civil Practice Act found,

"Under Section 38 of the Civil Practice Act any demand by one or more defendants against any one or more plaintiffs or against any one or more defendants may be pleaded as a counterclaim. Under this section it is not contemplated that rights of parties not parties to the record may be settled and determined upon a counter-claim filed after the issues have been disposed of on the main case, and with reservation of jurisdiction only as to distribution of the amount collected during the statutory period of redemption. The counter-claim filed herein is not filed against the plaintiffs nor is it filed against any of the defendants to this cause, but said counter-claim seeks the adjudication of the rights of one Harry Brainin who is not a party defendant herein except as it is attempted to make him one by said counter-claim.

"The court, therefore, holds that no counter-claim can be maintained herein and said Harry Brainin cannot now be made a defendant herein and compelled in this cause to try the issues raised by said counter-claim. The court, however, will pass upon the answer of said Harry Cohen, and will treat the counter-claim of Cohen as an additional answer to the petition of Abigail Gillmer."

We are of the opinion that the chancellor was correct in his ruling. This counterclaim is not between the parties to the suit and therefore was not proper under the provisions of the Practice Act. (*Countiss v. Whiting,* 306 Ill. App. 548, 552.)

At the time Gillmer filed her petition herein, the court had long prior thereto entered decrees with reference to the forclosure of the first mortgage trust deed, and approval of the sale and distribution of the proceeds of sale, so that the only jurisdiction the court retained was with reference to the collection of rents, issues and profits from the premises during the redemption period and distribution of the same to the parties entitled thereto.

The trial court therefore had jurisdiction to pass upon any question which would affect the distribution of the moneys collected during the period of redemption, but had no jurisdiction to pass upon any question which had previously been determined by the decree of the foreclosure and sale, the decree approving the sale and the decree approving the distribution of the proceeds of the sale. All of these decrees were final in their nature and all questions determined by these decrees could not again be passed upon by the trial court in this proceeding. No matter what pleading Cohen might file, or by what name he should designate it, the trial court could only pass on the questions which would affect the distribution of moneys received from the rentals of the property during the redemption period.

 The questions raised by Cohen's pleadings which refer to the distribution of moneys collected during the redemption period are: (1) the question of merger of the $200,000 of bonds claimed to be owned by Harry Brainin with the title also claimed to be owned by Brainin; and (2) the question of the subordination of Brainin's bonds. Under the reserved jurisdiction of the court the trial court had no jurisdiction under any pleading by Cohen to determine whether the equitable title of Brainin became subject to the lien of the full amount found due under the foreclosure decree, to determine whether Brainin became obligated to pay the full amount of the deficiency decree or to determine that Brainin should be required to repay the money he had received upon bonds secured by the first mortgage trust deed as his pro rata share of the proceeds of sale. Those could only be determined in separate suit to which Brainin was a party and which had jurisdiction of the subject matter of those questions. The only matters that we are called upon to determine in this state of the record are whether the allegations of Cohen's pleadings, whether by answer to Gillmer's petition or by counterclaim, show a merger of the bonds owned by Brainin with the title, and whether the Brainin bonds became subordinate to the other bonds secured by the first mortgage trust deed.

On the question of merger, it is well settled in this State that merger is a question of intention, and that no merger of a lesser with a greater estate will result unless it is shown that the party who owns the two estates actually intended that a merger should result. In the case of *Moffet v. Farwell*, 222 Ill. 543, the court in passing on the question of merger, said (p. 548):

"The principal question in this record is, whether, by the acceptance by Charles B. Farwell of a deed from Crain, the mortgage became merged in the fee and ceased to be a prior lien on the premises as against the

judgment held by plaintiff in error. Whether a merger results from a greater and less estate uniting in the same person depends upon what will best subserve the purposes of justice and the intention of the parties. This court has held the question always to be one of intention, and that the interests of the parties and their intentions are controlling considerations. (*Richardson v. Hockenhull,* 85 Ill. 124.) 'The intention is the controlling consideration, where it has been made known or can be inferred from the acts and conduct of the party, and the court will look into all of the circumstances of the case to ascertain his real intention. If it appears that he intended to discharge the encumbrance and rely exclusively upon his newly acquired title, the encumbrance is regarded as extinguished and cannot afterward be set up to strengthen and support that title. If no intention has been manifested, equity will consider the encumbrance as subsisting or extinguished, as may be most conducive to the interests of the party.' (*Campbell v. Carter,* 14 Ill. 286.) In *Edgerton v. Young,* 43 Ill. 464, it was held that whether a merger resulted from a greater and less estate meeting in the same person depends upon the intent and interest of the parties, and that a court of equity will keep alive both estates if it appears necessary to the ends of justice to do so. It was said in *Shippen v. Whittier,* 117 Ill. 282: 'The conveyance of the mortgagor's estate to the mortgagee does not operate as a merger, in equity, unless it was intended to have that effect.' These principles are sustained by *Lowman v. Lowman,* 118 Ill. 582, *Shaver v. Williams,* 87 id. 469, and *Farrand v. Long,* 184 id. 100.''

The same principle is announced in *Hooper v. Goldstein,* 336 Ill. 125; *Continental Illinois Nat. Bank & Trust Co. of Chicago v. Cunningham,* 291 Ill. App. 180; *Albers v. Westberg,* 299 Ill. App. 41; and *Winters v. Polin,* 309 Ill. App. 458.

The pleadings filed by Cohen do not allege sufficient facts on which a merger can be based. He alleges that as a result of the acquirement of title through the strict foreclosure proceeding and the ownership of the $200,000 in bonds, a merger resulted, but this is a mere conclusion of the pleader and an erroneous conclusion of law. The law does not raise a presumption of a merger, under the facts alleged, but, on the contrary, raises a presumption of no merger. So far as the allegations of Cohen's pleading are concerned, the bonds owned by Brainin were not canceled or discharged, and there is no fact alleged by Cohen which could be pointed to as evidence of any intention to merge the bonds and the title. From the facts alleged, the reverse must be presumed, because the manner in which the bonds and the title were held separately, and the manner in which the title was procured by a foreclosure proceeding, negative any finding of intention on the part of Brainin to merge the bonds with the title. Cohen further contends that the Brainin bonds were subordinated to the other outstanding bonds secured by the first mortgage. This contention is based on the claim that Brainin or Gillmer became liable for the first mortgage indebtedness. The acquirement of the equity of redemption by a third person who was not liable for the mortgage does not render the purchaser liable for the mortgage debt unless there is an express assumption of such debt by the purchaser. And when a title holder who is not liable for the mortgage debt effects a redemption, the redemption does not revive the balance due on the mortgage debt. (*French v. Toman,* 375 Ill. 389.) In passing on this point, the court in that case said (pp. 394, 395):

"Inasmuch as the sale extinguished the lien, and the redemption voided the sale and the certificate, the decisive question is whether the redemption revived the lien. The record does not show how appellee acquired title, but since it shows she is the sole owner,

and acquired title after the taxes became a lien, her position is that of a grantee from the one who owned the property when the taxes were assessed. A junior encumbrancer, who redeems from a foreclosure sale, takes free from any lien for the unpaid portion of the debt not realized by the sale. (*Seligman v. Laubheimer, supra* [58 Ill. 124]; *Ogle v. Koerner, supra* [140 Ill. 170].) The rights and obligations of a grantee and a junior encumbrancer who redeem are the same. (*Seligman v. Laubheimer, supra.*) The reason for this is that each redeems for his own benefit and not because of any relation with the party primarily liable for the debt. There is no logical ground for distinguishing between them. It follows, that if redemption by a junior mortgagee does not revive the lien of a prior encumbrance, a redemption by a grantee of the lien debtor will not do so. In *Ogle v. Koerner, supra,* it is said: 'When the redemption is made by a party primarily liable on the mortgage debt, it may be that the same property may be resorted to again for the purpose of subjecting it to the payment of an unpaid balance due on the mortgage, but that is not because of any right to enforce the mortgage lien against the same property a second time, but because of the rule of law which subjects all the property of a debtor to the payment of his debts until they are satisfied in full. But where the redemption is made by a party not liable upon the mortgage debt, the mortgage lien having been exhausted, the property cannot be subjected a second time to the satisfaction of the same lien. The party redeeming does so for his own benefit, and the holders of the senior mortgage having, by the sale, become entire strangers to the property, are in no position to derive any advantage from the redemption.' This is in accord with our holding as to deficiency decrees in *Strause v. Dutch, supra* [250 Ill. 326].

''It is of no consequence that because the redemption voided the sale, appellee still has the same title as before the foreclosure. She is not a person primarily

liable for the debt. Her position is that of a grantee from the former owner. She redeemed in an independent position from that of the former owner and for her own benefit, and her title is free from the lien of the taxes."

When Gillmer or Brainin foreclosed upon the second mortgage, this foreclosure wiped out the second mortgage debt but it did not wipe out the $200,000 first mortgage bonds held by Brainin, because the first mortgage bonds were in no wise involved in the second mortgage foreclosure proceeding. If a party holds a portion of a first mortgage indebtedness and also owns the second mortgage indebtedness, a foreclosure of the second mortgage lien does not in any way affect his holding of a portion of the first mortgage indebtedness. Nor are the covenants of the mortgagor in the second mortgage with reference to the payment of the first mortgage indebtedness, covenants of the mortgagee. The mortgagee under the second mortgage, by foreclosing certainly did not become obligated for the covenants of the mortgagor.

For the reasons hereinabove given, the order of the circuit court of Cook county striking the answer and counterclaim of Harry Cohen and dismissing the same for want of equity, is affirmed.

*Affirmed.*

BURKE, P. J., and KILEY, J., concur.