## HERRON, Respondent, v. ALLEN, Appellant.

### (143 N. W. 283.)

1. **Appeal—Error—Inconsistent Positions—New Trial—Unavailing Newly Discovered Evidence.**

    Although defendant at the trial objected to evidence to show that L. executed a deed to plaintiff, yet, having moved for new trial on ground of newly discovered evidence, showing L. executed it to plaintiff without consideration, he is thereby precluded from claiming, on appeal, that L. did not execute it.

2. **Deeds—Invalidity—Who May Assert Invalidity.**

    Where one seeking to assert invalidity of a deed as fraudulent or fictitious as a transfer, is not in a position to claim title through the grantor in such deed, he will not be heard to assert that it is fraudulent as to him.

3. **Appeal—Immaterial Attachment—Harmless Error.**

    Error in finding there was no attachment, or in refusing a new trial for newly discovered evidence of an attachment, is without prejudice to one to whom the attachment would be unavailing.

4. **Execution—Judgment in Rem—Second Execution for Deficiency—Lien of Attachment.**

    Under a judgment against a non-resident, based on substituted service and seizure of property under attachment, being a judgment in rem, the judgment creditor has not such a lien against the attached property as will, after sale thereof on execution and redemption therefrom, support a second sale thereof on execution for the deficiency; the judgment alone not constituting a lien, and the special lien under attachment, established by the judgment and continued by the execution, terminating on the execution sale.

5. **New Trial—Newly Discovered Evidence—Discovery of Materiality of.**

    Discovery by new counsel for a party that proof of a fact might be material, does not warrant new trial for newly dis-

covered evidence, where the fact in question, together with the sources for obtaining evidence thereof, was known by the other counsel trying the case.

(Opinion filed October 6, 1913.)

Appeal from Circuit Court, Potter County. Hon LORING E. GAFFY, and Hon. J. H. BOTTUM, Judges.

Action by O. F. Herron against Alva M. Allen, to quiet title. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

*Hanten & Hanten,* for Appellant.

Where the property of the judgment debtor has been sold for less than the amount of the judgment, and redeemed from such sale by the judgment debtor, the property may again be sold on a second execution issued on the same judgment for the balance due thereon. Scaman v. Galligan et al., 8 S. D. 277.

In some states where real estate has been attached and the attachment preserved, an execution levied under a judgment recovered in such suit operates as a lien from the date of the attachment, prior to all incumbrances created by the debtor subsequent to the levy of the writ of attachment. Salem First Nat. Bk. v. Redman, 57 Me. 405; Brackett v. Ridlon, 54 Me. 426; Brown v. Williams, 31 Me. 403; Nason v. Grant, 21 Me. 160; Huxley v. Harrold, 62 Mo. 516; Lackey v. Seibert, 23 Mo. 85; Harbison v. McCartney, 1 Grant (Pa.) 172; Mattocks v. Farrington, 16 Fed. Cas. No. 9,298, 2 Hask. 331.

A redemption by the debtor renders the sheriff's sale null and void as though it had never taken place. The very judgment on which the sale was had becomes again a lien, if it was not fully satisfied by the sale, and the land may be again sold. Bodine v. Moore, 18 N. Y. 347, on page 351; Phyfe v. Riley, 15 Wend. 248; Warren v. Fish, 7 Minn. 432 (Gill.) 347; Suttlemire v. Newsome, 10 Ore. 446; Bois v. White, 2 Abb. N. C. 163.

We now know from the newly discovered evidence that there was a warrant issued, levy made under it and that Herron is nominal plaintiff only and that Loring is the real party in interest. These facts are of great importance in this case. The judgment is based on wrong conclusions, hence should be set aside.

*Robt. B. Fisk,* for Respondent.

There was no "newly discovered evidence" shown below, and none is shown here. As the record in Woodward v. Loring stood, and still stands, all that plaintiff Woodward had (if she even had that) was a personal judgment against the defendant George E. Loring, based upon a purported service outside of the state of South Dakota, and that without the issuance of an attachment.

As shown by the record, the attorney for Woodward, in Woodward v. Loring, both in that case and in this case, proceeded upon the theory that such a judgment was a good and valid personal judgment; and this is especially shown to have been the case after H. S. Mouser ceased to be attorney for the plaintiff Woodward, and A. L. Ellis became the attorney for the plaintiff Woodward.

The second execution in Woodward v. Loring was caused to be issued by this same "A. L. Ellis, attorney for judgment creditor"; and that execution itself shows that at that time, Ellis regarded the judgment in Woodward v. Loring as a mere personal judgment, and the fact is that there has been, in this case, a discovery, not of new evidence, but of the materiality of evidence which was at the beck of the defendants at the time the case was tried, but which they did not then think or consider material to their defense herein.

Such evidence, and not merely its materiality, must have been discovered since the trial. Spelling on New Trial and Appellate Practice, Sec. 207; Hayne on New Trial and Appeal, (Ed. 1912) Secs. 211, 212.

The most that can be claimed for Woodward v. Loring is that Woodward had a personal judgment against Loring based upon personal service outside of the state. Such a judgment is absolutely null and void.

Even if everything had been legally done and the attachment regularly issued, and levied upon this land, that fact cannot justify, or give the court jurisdiction to render, a personal judgment against Loring. Exchange Bank v. Clement, 109 Ala. 280, 19 So. 817; Cudabac v. Strong, 67 Miss. 709, 7 So. 544.

And, if the attachment does not entirely satisfy the judgment, plaintiff has no redress for unsatisfied part. Eastman v. Dearborn, 63 N. H. 366.

While a court may decree foreclosure of a mortgage on a non-resident's property, it cannot enter a deficiency judgment, unless he appears. Blumberg v. Birch, 99 Cal. 417, 37 Am. St. Rep. 68, 34 Pac. 102; Williams v. Follett, 17 Colo. 54, 28 Pac. 331.

The mere rendition of a personal judgment against a non-resident cannot create a lien on his property. Demmy v. Ashley, 12 Colo. 167, 20 Pac. 332; Gorver, etc., Co., v. Radcliffe, 66 Md. 517, 8 Atl. 267; Fowler v. Lewis, 36 W. Va. 126, 14 S. E. 451.

Even if it were shown—which is not at all admitted—that Herron was a mere title-holder for Loring, or even if it were shown that Loring was, and always had been, the real owner of the land; still there is nothing in Woodward v. Loring that could have divested Herron, or Loring, of the ownership or title, either or both, to the land in controversy.

WHITING, P. J. Much is being written and spoken, and rightly so, concerning the law's delay. It seems the fashion to cast the odium therefor upon the courts, and there are undoubtedly cases wherein the courts—both trial and appellate—have laid themselves open to just criticism. That the blame is not all theirs is well illustrated by the history of the cause now before us, which history is as follows: Action instituted August 8, 1903; issue of fact joined October 3, 1903; trial had March 30, 1905; argued before trial court June 27, 1906; findings of fact, conclusions of law, and judgment signed June 28, 1906; execution stayed to September 20, 1906; error in judgment corrected March, 1909; findings, conclusions, and decree filed March 26, 1909; September, 1909, time for moving for new trial and for serving proposed stated extended to October 20, 1909, statement settled June 11, 1910; motion for new trial served July 1, 1910; new trial denied January 19, 1911; notice of appeal served March 11, 1911; notice of appeal filed January 23, 1912, upon stipulation of counsel and leave of court obtained; respondent granted until April 1, 1912, within which to serve and file briefs; placed on April, 1912, calendar with respondent in default; taken up for final disposition when stipulations dated March 30, 1912, were found to have been filed May 3, 1912, which stipulations extended time for respondents to file briefs; cause stricken from calendar as same was not properly on calendar in view of above stipulations; other stipulations filed extending time for respondent's brief; re-

spondent's brief filed April 30, 1913, being too late for April, 1913, calendar; May 29, 1913, ordered upon current calendar; reaches final decision in this court prior to date when it was entitled to go. upon the calendar of this court. Undoubtedly some of the delay was unavoidable, but much must have been inexcusable, and there was none for which any court was responsible, except as it may be held responsible for leniency granted parties and counsel.

This action was brought to quiet the title in and to a quarter section of land in Potter county. It appears there were other defendants than appellant, but no attention need be paid to them, as their rights, if any, rest upon those of appellant. Both parties claim title to this land through one George E. Loring. Plaintiff claims through a deed to him, dated March 16, 1900, and recorded March 22, 1900, which deed was signed "G. E. Loring." Defendant claims through a sheriff's deed upon an execution sale, based upon a judgment against Loring in an action entitled Woodward v. Loring. There had been a prior execution issued on this judgment and levied on this land; a sale had been had upon such prior execution, upon which sale there was a deficiency remaining; Loring had redeemed this land from such prior sale; and March 22, 1900, the execution, through which defendant claims, was issued for the deficiency, and was levied upon the land.

Application for new trial was made, one ground therefor being newly discovered evidence. It is contended that this new evidence would show that Loring executed the deed to plaintiff without consideration, and that plaintiff is a mere "straw man" holding title for Loring. It is also contended that this new evidence would show that there was in fact a warrant of attachment regularly issued and levied upon the property in question at the time of, and in connection with, the commencement of the action of Woodward v. Loring. The purported judgment in Woodward v. Loring was a default judgment, based upon personal service of summons and complaint upon Loring—concededly a nonresident of this state—which service was made in Iowa, and was based upon an order for publication of summons. The trial court found that no attachment had been issued in said action.

Numerous assignments of error are presented, but, as we

view the record, all questions material to this appeal may be discussed under two headings: (1) Proof of plaintiff's title; (2) materiality of the question as to whether or not there was in fact an attachment issued and levied upon the property in question, in the action of Woodward v. Loring.

[1, 2] Plaintiff, to prove his title, offered in evidence the record of his deed as the same appeared in the office of the register of deeds. Such record was objected to upon the ground that there was no sufficient proof that George E. Loring and G. E. Loring were one and the same person; also upon the ground that the acknowledgment to said deed was defective in form, and for that reason the deed improperly of record, and such record incompetent as proof of its execution. These objections were overruled, and such ruling is assigned as error. Appellant also claims that the evidence received did not sustain the court's finding that plaintiff got title to the land from Loring. In view of the position taken by appellant upon his motion for new trial, he cannot be heard to say that Loring did not execute the deed in question. The grantee in said deed having brought this action, it appears that he has accepted the deed, and, for the purposes of this action, it becomes immaterial what Loring's purpose was in the execution of said deed, unless appellant is in a position where he could claim title to said land as against Loring; if he could not claim title as against Loring, there can be, as against him, no fraudulent or fictitious transfer of said property by Loring. Is appellant in a position where he could claim title against Loring? This brings us to the second matter for our consideration.

[3] Appellant makes no contention that the judgment which was obtained by substituted service was one which, without the issuance and levy of an attachment upon the land in question, would have become a lien upon the land, and would have supported a sale thereof under general execution; therefore, if the evidence received supports the finding that there was no attachment issued, appellant's only hope lies in a new trial, wherein he may prove the issuance and levy of an attachment. The court found there was no attachment. Would it have availed appellant anything if the court had found that an attachment had been regularly issued and levied upon the property prior to the taking of the default judgment? If not, then, if the trial court erred in its finding, such

error was without prejudice to appellant, as was also the court's refusal to grant a new trial.

[4] Would a finding of the issuance and levy of an attachment have availed appellant anything? Clearly not, unless, where there is a judgment against a nonresident, based upon substituted service and seizure of property under attachment—in other words, a judgment in rem (Griffith v. Mil. Harvester Co., 92 Iowa, 634, 61 N. W. 243, 54 Am. St. Rep. 573; Nat. Bk., etc., v. Peters, 51 Kan. 62, 32 Pac. 637; Oil Well Supply Co. v. Koen, 64 Ohio St. 422, 60 N. E. 603; Soulard v. Vacuum Oil Co., 109 Ala. 387, 19 South 414)—the judgment creditor has such a lien against the property attached as will support a second sale thereof when the judgment debtor has redeemed the property from the first sale.

Appellant relies upon the case of Scaman v. Galligan, 8 S. D. 277, 66 N. W. 458, wherein it was held that, in the case of a judgment in personam—such an one as without any attachment becomes, when docketed, a lien against real property belonging to the judgment debtor—if such property is sold under execution issued thereon, and the judgment debtor redeems the property from such sale, the judgment creditor may take out a second execution and sell such property to satisfy any deficiency left upon the first sale. Appellant contends that this rule should apply in a case where the judgment is based upon substituted service and attachment of real property. In this he is clearly in error. It is well to bear in mind the foundation upon which the rule announced in Scaman v. Galligan, supra, is based.

A most exhaustive discussion of this rule will be found in Flanders v. Aumack, 32 Or. 19, 51 Pac. 447, 67 Am. St. Rep. 504. From a study of the Flanders Case and of the numerous authorities cited therein, it will be found that the ground upon which the courts which have approved the rule that there can be a second execution and sale for deficiency remaining after first sale upon execution issued upon a judgment in personam is the fact that such a judgment becomes a general lien against the real property, and such lien is not cut off by a sale that is rendered null and void by the judgment debtor's redemption of the property. But the lien of a judgment and the lien of an attachment are two entirely different things. Upon the levy of an attachment one acquires an inchoate or, as it is sometimes termed, a conditional lien

—a lien which will become fully established only upon the rendition of a judgment either in rem or in personam. Judges and text-writers often speak of this lien as one that becomes merged in the judgment lien. This use of the word "merged" is certainly inaccurate. Ordinarily, when we speak of one thing merging in another, it is when, upon such merger, at least one of the things loses its former identity, and no such a merger takes place when the inchoate attachment lien comes into full force and effect upon the happening of that condition upon which its continued existence depended—the entry of judgment in the action. When a judgment is in rem, there is, by virtue of the judgment alone, no lien whatsoever. This is evidenced by the fact that there would have been no valid judgment were it not, for the attachment, and by the further fact that, even where there has been an attachment issued and levied upon certain real property, the judgment is not a lien against any other real property of the judgment debtor. The judgment itself, standing alone, is not even a lien upon the property attached; this is evident from the fact that, if an execution sale was made upon a judgment, and it should afterwards develop that the attachment was void, the sale would be a nullity. Neither does an attachment lien merge in the lien of a judgment in personam so as to lose its distinctive features. In case of a sale upon an execution based upon a judgment in personam preceded by an attachment, the purchaser, by virtue of the attachment lien, would acquire such title as the debtor had at the time the attachment was levied, regardless of all liens upon or transfers of the property subsequent in date to the levy of the attachment, and such purchaser would also acquire any additional interest in the property levied upon which the judgment debtor might have acquired subsequent to the levy of the attachment and prior to the docketing of the judgment; but, if after sale made the attachment should be declared invalid, while the purchaser, *by virtue of the judgment* lien, would still hold any and all interests which the judgment debtor held in the property at the time the judgment was docketed, he would lose all of the benefit that would have come to him because of the *special lien* which would have been acquired through the attachment if it had been valid. It is thus clear that, while the inchoate lien may be given full vitality by a judgment, yet it remains a separate, distinct, and specific lien, dif-

fering essentially in its nature from the only lien that can be ac-
quired through a judgment alone, namely a general lien.    This
special lien is in all things analogous to that of a mortgage, pledge,
mechanic's lien, agister's·lien, etc.   In the case of mortgage fore-
closure by suit, the judgment does not create the mortgage lien—it
merely adjudicates its existence and directs sale to enforce it.   If,
upon a foreclosure, there should be only substituted service against
the mortgagor, the money judgment rendered would be one purely
in rem, and would be no lien against any property of such mort-
gagor; any sale of such property would rest directly upon the
mortgage—the only effect of the judgment being in its adjudica-
tion of the existence of the mortgage lien, and the amount secured
thereby, with a direction that special execution issue to pay such
amount.   If, in such foreclosure action, there was personal service
upon the mortgagor, or he entered personal appearance, then such
judgment would not only adjudicate the validity of the mortgage
lien and the amount secured thereby, and authorize the enforce-
ment of such lien by sale, but, being also a judgment in person-
am, the deficiency judgment, if any, would become a lien upon
*any* real estate of the mortgagor, and as such sufficient to support
an execution sale thereof.   It is well established by the authorities
that any sale upon special execution in a foreclosure action, fore-
closing a real estate mortgage, mechanic's lien, or any other
*special* lien, terminates such lien, and no future sale can be made
by virtue thereof.   It follows that, after a foreclosure sale, there
can be no second special execution, and, if the foreclosure judg-
ment was solely in rem, neither could there be any general exe-
cution for deficiency—no special execution because the special lien
is at an end, no general execution because there is no general
lien—but if the judgment had been one in personam as well as
in rem, then, after the sale upon the special execution, there could
be a general execution for any deficiency, which general execu-
tion could be levied upon any land against which the judgment in
personam was a lien; and, if there should be applied the rule
announced in the Scaman Case, there could be a levy upon and
sale of the land theretofore sold under the special execution, pro-
viding said land belonged to the judgment debtor, and had been
by him redeemed from such sale under special execution.   See

Flanders v. Aumack, supra; Ogle v. Koerner, 140 Ill. 170, 29 N. E. 563.

It follows that, even if an attachment did issue and was levied upon the property in question, the lien thereof, which was established by the judgment and continued by the execution, terminated upon the execution sale, and could be no more restored than could any other special lien upon which sale had been made; therefore a finding that an attachment was issued and levied upon the property would have availed appellant nothing, his title resting, as it does, entirely upon the second execution sale issued upon a judgment in rem, and which execution was, for reasons above stated, wholly void.

[5] An examination of the record shows that one of the attorneys who, upon behalf of appellant, prepared this case for trial in the circuit court, was one of the purchasers on the second sale, that he was one of the attorneys for Woodward in the action against Loring, and that, according to his own affidavit, he knew, prior to the trial of this cause, all about the issuance and service of the writ of attachment in Woodward v. Loring, as well as the sources from whence he might have obtained competent evidence in relation thereto. Instead of this being a case where there was an excusable lack of diligence in the discovery and unearthing of material evidence, it is one wherein there appears to have been a very late discovery, by new counsel for appellant, of the fact that proof of such attachment might be material—something which comes far short of warranting the granting of a new trial.

The judgment and order appealed from are affirmed.