[File No. 6707]

ADA E. ROLLIE, Appellant, v. A. W. BETHKE, Respondent.

(299 NW 303)

Opinion filed July 21, 1941.   Rehearing denied August 9, 1941.

*Peler A. Winter,* for appellant.

*Nels G. Johnson,* for respondent.

BURKE, J. This is an action to determine adverse claims to real property. The judgment of the District Court was in favor of the defendant. The plaintiff has appealed and demanded a trial anew in this court.

In 1929, Dr. R. C. Rasmussen, a physician of Drake, N. D., and two associates organized a nonprofit corporation without capital stock known as the Drake Hospital, Inc. Immediately thereafter one Jennie Saueressig transferred to The Drake Hospital, Inc., Lots One (1) and Two (2) in Block Eleven (11) of the Original Townsite of Drake. The hospital building in which Dr. Rasmussen had been conducting his medical practice for three years was located upon these lots. At the time of the transfer and to secure a part of the purchase price of the lots, The Drake Hospital, Inc., executed and delivered to Jennie Saueressig its mortgage in the sum of $2,000.

In September, 1930, plaintiff's husband Dr. O. C. Rollie came to Drake as Dr. Rasmussen's assistant. In November, 1930, plaintiff joined him, and they took up their residence in an apartment in the hospital building. In May, 1931, The Drake Hospital, Inc., executed and delivered its note and mortgage in the sum of $12,000 to Dr. R. C. Rasmussen. This mortgage was filed for record on June 22, 1931, and upon the same day was assigned to one S. A. Rasmussen a nephew of Dr. Rasmussen. About the same time the plaintiff leased the hospital from the hospital corporation for a rental of $125 a month. During the summer of 1931 the defendant installed a heating plant in the hospital building, finishing work in the latter part of August, for

which work and materials he was not paid in full and for which he obtained a judgment against The Drake Hospital, Inc., on May 4, 1934, in the sum of $442.99. Meanwhile Jennie Saueressig had foreclosed her purchase price mortgage and the property had been sold to her at foreclosure sale on May 6, 1933. On May 5, 1934, S. A. Rasmussen redeemed from the foreclosure sale and received a sheriff's deed to the property. On June 23, 1934, plaintiff purchased the property from S. A. Rasmussen under a contract for deed. Early in 1938 she received the deed to the property and in August of that year commenced this action to quiet title thereto as against the lien of plaintiff's judgment against The Drake Hospital, Inc.

It is conceded that upon the bare record title, plaintiff would be entitled to judgment. The defendant, however, asserts, first, that The Drake Hospital, Inc., was organized for the purpose of defrauding and delaying the creditors of Dr. Rasmussen, that therefore the corporate entity must be disregarded and the corporation and Dr. Rasmussen treated as identical; second, that the mortgage given by The Drake Hospital, Inc., to Dr. Rasmussen and by him assigned to S. A. Rasmussen is void as to the defendant in that it was given and assigned without consideration for the purpose of defrauding and delaying creditors and is in legal effect a mortgage given by Dr. Rasmussen to himself. In her reply the plaintiff alleged "that Defendant is estopped from asserting and setting up as a defense that the Mortgage given by Drake Hospital Incorporated, to R. C. Rasmussen and the Assignment of said Mortgage to S. A. Rasmussen, are fraudulent and are made for the purpose of hindering and delaying creditors . . . for the reason that said Defendant at all times knew and was aware of the fact that said Mortgage and Assignment were fraudulent, if they were fraudulent."

Three issues are thus presented. 1. Was the corporation organized and were the mortgage and assignment fraudulently made for the purpose of defeating or delaying the creditors of Dr. Rasmussen and the Corporation? 2. Was plaintiff an innocent purchaser for value? 3. Conceding the fraud as to creditors generally did the defendant have actual notice of the fraud before he extended credit and will such prior notice bar him from attacking the fraudulent mortgage and assignment?

We think that the issue last stated is determinative of the case and it

will therefore be unnecessary to consider in this opinion the conflicting evidence which was offered upon the question of fraud and upon that of the good faith of the plaintiff. Upon the question of notice the testimony is clear and undisputed. It is the testimony of the defendant himself. The record is as follows:

"Q. And did you talk to him (Dr. Rasmussen) about his business affairs?"

"A. Oh, yes, we had a lot of talk."

"Q. And do you know whether Dr. Rasmussen was in trouble with his creditors when he was in Drake?"

"A. He was constantly in trouble, and is yet."

"Q. Well now, you tell us the conversation that you had with reference to this mortgage that he (Dr. Rasmussen) was going to give. What did he say?"

"A. Well, of course, he has had trouble about the Balfour Lumber Company. He was building on the new hospital there, and you see they tried to force collection, so he said he was going to put this mortgage and give it to his nephew as a blind so as to cover up these fellows so they could not get anything, no judgment against him would be valid, see." . . .

"Q. Now, getting back Mr. Bethke, at that time you were not a creditor of his (Dr. Rasmussen's) were you?"

"A. No, not at all."

And further:

"Q. How did you know there was such a mortgage?"

"A. Because Rasmussen told me."

"Q. Did he tell you it was there?"

"A. Yes."

"Q. Oh. And that was in 1929, wasn't it?"

"A. Somewheres around there."

Thus at the time the defendant installed the furnace and extended credit to The Drake Hospital Inc. and Dr. Rasmussen, he had actual knowledge of the doctor's difficulties with his creditors and the means he had taken to defeat them. If there was fraud he had actual notice of it.

Upon the question of the effect of such notice there is some conflict of authority. 27 CJ 525; 24 Am Jur 287, Fraudulent Conveyances.

Courts which have held that a subsequent creditor may attack a fraudulent conveyance of which he had notice, have done so upon the premise that such a conveyance is wholly void ab initio and that one who subsequently becomes a creditor with notice may rely upon the fact that the fraudulent conveyance is no conveyance at all. Echols v. Peurrung Bros. & Co. 107 Ala 660, 18 So 250. Note in 14 Am St Rep 755. This premise cannot be sustained. Our statute (Comp. Laws 1913, § 7220) declares that such a conveyance is void as to creditors. As to all others it is valid. A creditor may affirm such a conveyance. 27 CJ 481; Reitsch v. McCarthy, 35 ND 555, 160 NW 694. And he may attack it only when he can show he has been injured by the grantor's act. Ingwaldson v. Skrivseth, 7 ND 388, 75 NW 772; Crowley v. Brower, 201 Iowa 257, 207 NW 230, 7 Am Bankr Rep(NS) 890; White v. Smith, 210 Iowa 787, 231 NW 309; Nash v. Geraghty, 105 Mich 382, 63 NW 437; Herron v. Allen, 32 SD 301, 143 NW 283, 47 LRA(NS) 1048.

The generally accepted and we think the better rule is that a subsequent creditor may not attack a conveyance, where at the time he extended credit, he had actual knowledge both of the conveyance and of the circumstances under which it was made. 27 CJ 525; 24 Am Jur 287, Fraudulent Conveyances; Moore, Fraudulent Conveyances, 195; Goebel v. Gregg, 57 Cal App 651, 207 P 917; Schreyer v. Scott, 134 US 405, 33 L ed 955, 10 S Ct 579.

The judgment of the District Court is therefore reversed and judgment ordered for the plaintiff.

BURR, Ch. J., and MORRIS, CHRISTIANSON, and NUESSLE, JJ., concur.