LUCINA A. SMITH, Defendant in Error, vs. BYRON A. ROATH, Plaintiff in Error.

*Opinion filed February 19, 1909.*

1. EASEMENTS—*when fact that passageway was closed by gates does not preclude easement by prescription.* The fact that a passageway was closed by gates at each end for a number of years does not preclude the acquiring of an easement by prescription, where such gates never interfered with the free use of such passageway for the purposes for which it was intended.

2. SAME—*what does not extinguish easement by prescription.* In order that merger of title to the dominant and servient estates shall operate to extinguish an easement by prescription the ownership of both estates must be co-extensive, and the fact that a part owner of the servient estate becomes the sole owner of the dominant estate is not such a merger as extinguishes the easement.

3. PARTITION—*when complainant's solicitor's fees should not be apportioned as costs.* Complainant's solicitor's fees in a partition proceeding should not be charged as costs where there was a substantial contest over an easement of passage to which the defendant was entitled.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

May 20, 1907, a bill was filed in the circuit court of LaSalle county by defendant in error and her husband for the partition of lot 5 in block 6, in Clark & Underhill's addition to Marseilles, Illinois. Byron A. Roath answered, admitting the substantial facts set forth in the bill, except that he claimed that five feet on the west side of said lot 5 was set apart as a portion of an alley between lots 5 and 6 in said block, and had been used as an alley for more than forty years with the knowledge and consent of all the parties to this litigation. The answer further alleges that said Byron A. Roath is the owner in fee simple of lots 6, 23 and 24 in said block 6, and that without the use of said five feet on the west side of lot 5 the use and occupation of lots 6, 23 and 24 would be seriously impaired, because the access

to the out-buildings on said lots would be entirely cut off.
The relative situation of the lots and the alley may be seen
from the following plat:

The cause was referred to a master to take proof, and
he reported, among other things, that there was an alley-
way running from Clark to Bluff street, as set forth in said
answer, which had been in open and continuous use of the
persons ocupying the buildings upon said lots for more than
forty years and was a necessary and valuable means of ac-
cess to said buildings; that said boundary line as to said

alleyway on lot 5 had been well known to all the parties since Hannah A. Roath's death; that said defendant in error, Lucina A. Smith, had known of its existence for upwards of forty years, and that said lots were subject to the burden and servitude of said alley. The circuit court sustained objections to the finding of the master as to this easement, but in all other respects approved the master's report and entered a decree of partition.

The commissioners appraised the value of the property at $1500, and reported that it was not susceptible of division and recommended a sale. This report was approved and the court ordered the property sold by the master. On June 4, 1908, after duly advertising in accordance with the requirements, the master sold the property to said defendant in error, Lucina A. Smith, for $1575, she being the highest bidder. Thereafter, upon petition filed by the solicitors for defendant in error, the chancellor allowed $100 as complainants' solicitor's fees, to be taxed as costs. Plaintiff in error entered a motion to vacate the order taxing solicitor's fees and prayed an appeal, which was not perfected. Thereupon a decree of distribution was entered, the balance, after paying costs, fees and expenses, being divided, approximately two-thirds to Byron A. Roath and approximately one-third to Lucina A. Smith. A writ of error has been sued out to review the findings of the circuit court.

PETER M. McARTHUR, and BUTTERS, ARMSTRONG & FERGUSON, for plaintiff in error.

ELMER E. ROBERTS, and McDOUGALL & CHAPMAN, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

The main contention in this cause is as to whether a passage or alleyway existed across the west five feet of said lot 5 by prescription. Plaintiff in error, Roath, contends,

and so testified, that the four lots in question were purchased with money sent home by him from the army in 1865; that in the winter of 1865 and 1866, on his return home, he built on lot 23 and his father built on lot 5; that at that time he, plaintiff in error, owned all four lots, and that they agreed between them that there should be a private alley, composed of five feet from the west side of lots 5 and 24 and five feet from the east side of lots 6 and 23, and that the coal houses, barns, etc., should be so placed as not to obstruct said ten-foot alleyway; that there was a fence built on said lot 5, five feet east of the west line, in the latter part of 1866, which is there yet; that trees came up and were allowed to grow along the line of that fence and that some of them have now been there over twenty years; that said alley has been a private passageway forty-three years, and that coal houses and barns were so built as not to obstruct it. No record evidence was offered showing that Byron A. Roath had ever held title to lots 5 and 24 in 1865 or 1866, but the deed was introduced showing that he obtained title to lots 6 and 23 November 6, 1865, and it appears that he has owned them ever since. The deeds offered in evidence also show that in February, 1872, R. M. Roath, the father of Byron A. Roath, deeded, through Lewis H. Harris, said lots 5 and 24 to his wife, Hannah A. Roath, and that the title remained in her name until her death; that the heirs of said Hannah A. Roath, to-wit, Byron A. Roath, Eva R. Roath and Lucina A. Smith, on March 9, 1874, quit-claimed said lot 5 to William H. Wilson, and that Wilson and wife re-conveyed said property to said heirs on May 27, 1874; that the title remained in said three children up to January 24, 1894, when Eva Roath Hay, one of them, with her husband, conveyed to said Byron A. Roath an undivided one-third interest in said lot 5. The evidence shows that in the spring of 1874 William H. Wilson and his wife, having bought said lot 24, built a house on it, in which they lived for many years; that at

the time they purchased said lot there was a fence five feet east of the west line of said lot 5, as heretofore set out, and that it has remained there ever since that date.

There is evidence tending to show that this private passageway or alley between Bluff and Clark streets, during a portion of the past forty years, had gates at both ends, but the gate has been removed next to Clark street for eighteen years or more. The evidence is not very definite as to how long these gates existed, but it is very evident from all the testimony that they did not in any way interfere with the free access to this passageway for the delivery of coal and groceries, and for any other use to which it might be properly put by the residents of said four lots. The evidence is also very clear that defendant in error, Lucina A. Smith, had lived in Marseilles within a short distance of this property during all of these years and never objected to such use of this passageway. It will be presumed from this record that the use of this passageway or alley was so open and notorious that she had knowledge of the claim of right by the parties residing on said lot to such use. (Jones on Easements, sec. 266.) Under the circumstances shown in this record, the fact that this private passageway was closed at both ends by gates does not in any way negative the claim of an easement by prescription, as the gates never interfered with the use of the passageway for the purposes for which it was intended. (*Martin* v. *Murphy*, 221 Ill. 632; *Truax* v. *Gregory*, 196 id. 83.) Indeed, the only serious question raised on this record as to the right to use the passageway across said west five feet of lot 5 is whether such use in the past by plaintiff in error, Byron A. Roath, was an adverse user, he being since 1874 a tenant in common as to said lot 5. Manifestly, from the evidence, when lot 24 was sold by plaintiff in error, Byron A. Roath, and his two sisters, Lucina A. Smith and Eva R. Hay, in 1874, to Wilson, the existence of this passageway, made during the unity of seizin by the original owners, was so apparent

and so necessary to the reasonable enjoyment of lots 5 and 24 that upon the severance of title of said two lots each of said lots would pass subject to the burdens and advantages imposed or conferred by said easement. *Powers* v. *Heffernan,* 233 Ill. 597, and cases there cited.

There can be no question that had the title to said lot 24 remained in the Wilsons up to the present time they would have a prescriptive right to a passageway or private alley across said west five feet of lot 5. Wilson having died, his wife, Ella S. Wilson, deeded said lot 24 to Byron A. Roath on June 21, 1900. No question is raised as to this deed conveying good title as to said lot 24, but counsel for defendant in error argue that this was such a merger of title in Byron A. Roath of said lots 24 and 5 that the easement that existed in favor of said lot 24 across said lot 5 was extinguished. The law is settled that where there is a unity of absolute title to and possession of the dominant and servient estates in the same person it operates to extinguish such easement absolutely and forever, for the reason that no man can have an easement in his own land; but it is also true that in order to have the unity of title of the dominant and servient estates work an extinguishment of an easement existing between them, the ownership of both must be co-extensive. Washburn on Easements and Servitudes,— 4th ed.—*518.

In *Reed* v. *West,* 82 Mass. 283, that court had before it the precise question here under discussion. One Bliss obtained full title of the dominant estate and at the same time was the owner of an undivided one-third of the servient estate. The court said (p. 284) : "It is contended that this ownership created such a unity of title as to extinguish the right of way. The subsequent deeds, and user under them, would be a sufficient answer to this position. But it is further to be considered that a unity of possession or right that extinguishes a prescriptive right must be such that the party should have an estate in land *a qua* and in the land *in qua,*

equal in duration, quality and all other circumstances of right. (*The King* v. *Hermitage,* Carth. 241; Vin. Ab. "Extinguishment," C; *Thomas* v. *Thomas,* 2 Cr., M. & R. 34, and 5 Tyrwh. 804; *Ritger* v. *Parker,* 8 Cush. 145.) The title of Bliss to one undivided third part of the defendant's close as tenant in common did not constitute such a unity, for it did not authorize him to set apart any portion of the close for a private way for himself as if he had been sole owner, but his use of the way during the time of his tenancy in common must have been adverse to his cotenants." This same doctrine was laid down by that court in *Atlanta Mills* v. *Mason,* 120 Mass. 244, and has been referred to with approval in 14 Cyc. 1154, and 22 Am. & Eng. Ency. of Law, (2d ed.) 1206. The following authorities also tend to uphold the rule of law laid down in that case: *Dority* v. *Dunning,* 78 Me. 381; *Bradley's Fish Co.* v. *Dudley,* 37 Conn. 136; Washburn on Easements and Servitudes, *supra;* Jones on Easements, sec. 168.

In this connection our attention has been called to *Crippen* v. *Morss,* 49 N. Y. 63, and *Pfeiffer* v. *University of California,* 74 Cal. 156, where it is contended a contrary rule is laid down. While there are some expressions in those opinions that tend to uphold such contention, we are of the opinion that those cases discussed facts so very different from those here, that those decisions do not necessarily conflict with the rule of law laid down in *Reed* v. *West, supra.* Be that as it may, the weight of authority, as well as the sounder reasoning, supports the rule laid down in the *Reed case.*

It must, therefore, be held that the purchase of lot 24 by the plaintiff in error, Byron A. Roath, in 1900, did not bring such a unity of title in him, as to lots 5 and 24, as to extinguish the easement in favor of said lot 24 in said five-foot strip for an alleyway over said lot 5. The circuit court erred in overruling the master's finding in this regard.

From our conclusion on the question of easement it necessarily follows that the circuit court was in error in charging a portion of the solicitor's fees in said partition proceedings as costs, to be divided in proportion to the interests. There was a substantial contest over this easement, and under the reasoning of this court in *McMullen* v. *Reynolds,* 209 Ill. 504, and *Jones* v. *Young,* 228 id. 374, plaintiff in error, Byron A. Roath, should not be compelled to pay a part of defendant in error, Lucina A. Smith's, solicitor's fees.

For the reasons indicated the findings of the circuit court are reversed and the cause remanded, with directions to enter a decree in accordance with the views herein set forth.     *Reversed and remanded, with directions.*