(No. 37480.—

Beloit Foundry Company, Appellee, *vs.* Helen Goodall Ryan *et al.*, Appellants.—(Joseph Johnson, Intervening Petitioner-Appellee.)

*Opinion filed May 27, 1963.—Modified on denial of rehearing September 26, 1963.*

MILLER, THOMAS, HICKEY & COLLINS, of Rockford, (L. C. MILLER and FRANCIS E. HICKEY, of counsel,) for appellants.

GUYER & ENICHEN and WILLIAMS, McCARTHY & KINLEY, of Rockford, (STANLEY H. GUYER and KARL C. WILLIAMS, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Plaintiff, Beloit Foundry Company, filed suit in the circuit court of Winnebago County to enjoin Helen Ryan and Alan Ryan, her husband, from obstructing an alleged right-of-way easement running easterly and westerly across lot 40, county clerk's plat of a part of South Beloit, Illinois. The defendants denied the existence of any such easement

and counterclaimed for damages resulting from the plaintiff's removal of certain buildings and fences from the alleged right of way. By leave of court, Joseph Johnson, who also owned land fronting on the alleged easement, was allowed to intervene as a petitioner in requesting injunctive relief. After hearing the evidence adduced by the parties, the lower court found that an easement appurtenant to all premises abutting thereon did exist, enjoined the defendants from interfering with its use and denied defendants relief under their counterclaim. A freehold being involved, defendants have appealed directly to this court. *Kling* v. *Ghilarducci,* 3 Ill.2d 454.

As originally platted, lot 40 was quadrangular in shape, being bounded on the easterly side by lot 41 of the same subdivision, on the south by what is now Gardner Street, and on the west by the right of way of the Rockford, Beloit & Janesville Railway Co. The easterly boundary measured 800.29 feet in length, the southerly boundary 564.57 feet, the westerly boundary 570.16 feet, and the northerly boundary 647.8 feet. The railroad property was 33 feet in width along the entire westerly side of lot 40 and the railroad land was itself bounded on the west by what is now Blackhawk Boulevard. Prior to January 8, 1925, all of lot 40 was owned by Joseph A. Janvrin, but on that date he conveyed the north 200 feet thereof to T. B. Goodall, who was the father of the defendant, Helen Ryan. Among other things this deed provided: "It is also mutually agreed between the parties hereto that a private alley is hereby created thirty feet wide, 15 feet of same in equal width being off the south side of the premises hereinbefore described, and 15 feet thereof being off the north side of the premises of * * * Joseph A. Janvrin immediately south of the premises hereinbefore described. The said alley shall be used perpetually for the usual purposes of a right-of-way by the parties hereto and their respective heirs, personal representatives and assigns."

The following plat roughly shows the situation:

On July 3, 1925, Janvrin conveyed to R. E. Freeman the remainder of lot 40, except a strip 100 feet in width extending southerly from the Goodall property along the easterly boundary of lot 40 for a distance of approximately 288 feet, said excepted parcel to be hereinafter referred to as tract A. The conveyance to Freeman recited: "including a right-of-way over a strip of land 15 feet in equal width along the entire north side of the property herein

conveyed and adjoining the same and except a right-of-way over a strip of land 15 feet in width off the north side of the property herein conveyed, said 2 strips of land to form a private alley as described in the warranty deed from Janvrin to Goodall dated January 8, 1925, such private alley being intended for the use of the several owners of said Lot 40."

Freeman then conveyed to T. B. Goodall a parcel extending 300 feet along the southerly boundary of the property acquired by Goodall from Janvrin, adjoining tract A on the west, and running southerly for a distance of 68.87 feet. For purposes of identification, this parcel will be referred to as tract B. Except for a 100-foot strip in the southeasterly corner thereof, the balance of the Freeman property, together with that portion of the railroad right of way adjoining the Freeman property on the west, was, in 1932, further subdivided into lots 1, 2, 3 and 4 of Freeman's subdivision. Lot 2 was approximately 116 feet in depth and extended some 250 feet along the south line of the aforesaid "private alley" from tract B to what was formerly the railroad property. Lot 1 was that portion of the Freeman land situated south of tract B and lot 2, whereas lots 3 and 4 were those portions of the railroad parcel lying westerly from lots 2 and 1, respectively.

On September 14, 1932, Janvrin sold to the petitioner, Joseph Johnson, so much of tract A as lay south of the "private alley" and, in addition, granted to Johnson the right to use in common with others a right of way approximately 30 feet in width extending from the east line of lot 40 westerly to Blackhawk Boulevard, but Janvrin did not warrant "as to any obstruction or obstructions on said right-of-way." In 1936, Johnson also acquired lot 2 of Freeman's subdivision by deed from Freeman containing no reference to the alleged right of way, and in 1942 Freeman conveyed lot 1 to the plaintiff, Beloit Foundry Com-

pany, which had for some years prior thereto also owned the westerly portion of lot 41, upon which their factory was located. The deed from Freeman to the plaintiff included "all easements appurtenant thereto, and especially all of the grantor's rights in the easements mentioned in that certain warranty deed from Joseph A. Janvrin and wife to R. E. Freeman dated July 3, 1925."

Having acquired her father's interest in these properties, the defendant Helen Ryan, and her mother, in September, 1942, deeded to the Beloit Foundry Company a strip 30 feet in width off the easterly end of tract B, said smaller parcel being hereafter called tract C, by an instrument containing the following language: "Excepting such easement or right-of-way which owners of adjoining lands may have over the north 15 feet of the parcel hereby conveyed; And including a permanent easement for driveway purposes, thirty (30) feet in equal width, connecting the property hereby conveyed with grantee's property located easterly of, and adjacent to the East line of said Lot 40." At the same time, Beloit Foundry Company quitclaimed to said defendant and her mother "all right, title and interest in that certain easement or so-called private driveway, thirty (30) feet in width and extending from the westerly end of the easement hereinbefore described, to Blackhawk Boulevard."

Shortly thereafter, Helen Ryan and her mother acquired by quitclaim deed from Freeman a 15-foot strip adjoining lots 2 and 3 of Freeman's subdivision on the north, such strip being the southerly half of the alleged private alley from tract B to Blackhawk Boulevard and hereinafter referred to as tract D. On September 27, 1943, Johnson conveyed tract A, except a 20' x 52.97' parcel in the northwest corner, to Beloit Foundry Company granting "Also the right to use in common with others a right-of-way directly north of the above described land and adjoining it, approximately 30 feet in width extending from the East

line of Lot 40 \* \* \* westerly to Blackhawk Boulevard \* \* \*." For convenience the excepted parcel will be hereinafter referred to as tract E. As part of the same transaction, Beloit Foundry Company then conveyed to Johnson a 63′ x 50′ parcel situated in the northerly part of lot 1 adjacent to the southwest corner of tract B, said parcel being hereinafter identified as tract F. This conveyance recited the following: "together with any rights or easements that may be appurtenant to or that may be used in connection with said lands in a thirty foot right-of-way adjoining Lot Two (2) on the north and running west to Blackhawk Boulevard, and east to the east line of Lot forty (40) \* \* \*." It was stipulated that what were formerly lots 3 and 4 of Freeman's subdivision have since become a part of Blackhawk Boulevard.

Helen Ryan, as heir of T. B. Goodall, owns the property originally acquired by the latter from Janvrin in 1925, including the fee underlying the northerly 15 feet of the alleged easement. The southerly 15 feet of such easement extends from Blackhawk Boulevard across tracts D and B, which Helen Ryan now appears to own; across tract C which Beloit Foundry Company acquired in 1942; and then easterly to the east line of lot 40 over land which appears to still be owned by Joseph A. Janvrin, or his heirs. Lot 2 of Freeman's subdivision and what we have identified as tract E, all of which appear to be owned by Johnson, together with tract A which is owned by Beloit Foundry Company, adjoin the alleged easement on the south but do not underlie the easement itself. Lot 1 of Freeman's subdivision, now owned by Beloit Foundry Company, and tract F, owned by Johnson, neither underlie nor adjoin the easement in question.

As to the prior use of said alleged easement, Harold Halverson, president of Beloit Foundry Company, testified that plaintiff acquired its factory site on lot 41 in 1915, and that subsequent to 1930 the easement across lot

40 was filled so as to make it passable for its entire length. According to this witness, plaintiff hauled sand over the easement to its factory from about 1930 to 1945 or 1950, and plaintiff's employees and customers traveled it in going to and from plaintiff's factory. During these years Joseph Johnson also used the alleged roadway in hauling products for his business conducted on lot 2 of Freeman's subdivision. Halverson produced certain photographs taken in 1948 which purportedly show the existence of a traveled roadway across the easement. He also stated that sometime after 1942 the defendants had partially obstructed the easement with fences, rock, and a concrete building, and that in 1955 plaintiff removed the fences and certain other obstructions and graded the easement to its full 30-foot width wherever possible.

Joseph Johnson, the intervening petitioner, testified that he built a gasoline filling station and bulk plant on lot 2 of Freeman's subdivision in 1932 and thereafter used the alleged easement in going to and from his unloading racks situated on the easterly side of lot 40, in hauling pipe from the racks to his place of business, and in going to and from plaintiff's factory with which Johnson did business. On the average, continued Johnson, he or his employes used the roadway once a day from 1932 to the present time. He acknowledged that defendants had placed a gate across the easement in 1954 and admitted that he removed it a few days later. He also stated that for the past several years the defendants continued to partially obstruct the easement with fences and a concrete building.

Wilhelm Nelson, a former employee of Joseph Johnson, told of using the easement from 1934 through 1937 to haul pipe from the unloading racks to the service station and to haul gasoline from the bulk plant. From 1942 until the fall of 1945, this witness recalled using the roadway in going back and forth from his employment at the

Beloit Foundry Company factory. Ralph Larkin, a truck driver for another company, swore that almost every day for the past 18 years he had delivered material to plaintiff's factory and then traveled westerly across the alleged easement to Blackhawk Boulevard.

Defendant Alan Ryan admitted the construction of a concrete building and fences upon the 30-foot strip and denied the existence of an easement. According to Ryan, the supposed right of way was impassable until 1940 when plaintiff, with defendants' permission, started to dump its foundry dirt in the area. Thereafter, plaintiff claimed an easement over the 30-foot strip, but as a part of the consideration for the sale of tract C, plaintiff, in 1942, released its right to that portion of the easement allegedly running westerly from tract C to Blackhawk Boulevard. As a result thereof, defendants subsequently fenced the 30-foot strip as their property and this condition continued until the fences were removed by plaintiff in 1955. Ryan stated that defendants operated a coal and storage yard upon their property, and insisted that from 1925 until 1955 only their customers drove across any portion of the alleged easement. In fact, according to Ryan, it would have been physically impossible for a vehicle to have traversed the entire length of the alleged easement prior to 1942.

Beloit Foundry Company and Joseph Johnson contend that by the original deed from Janvrin to Goodall, a 30-foot perpetual easement, running from Blackhawk Boulevard to the east line of lot 40, was created for the benefit of all abutting real estate. The defendants, on the other hand, insist that the easement originally created was for the sole benefit of adjoining owners in lot 40, that the parcels owned by Beloit Foundry Company and Johnson do not include but merely adjoin the easement and are therefore not a dominant estate, that the right of way

originally created has since been abandoned, and that plaintiff waived its right in such easement by its quitclaim deed delivered to defendants in 1942.

An easement is a right or a privilege in the real estate of another, (16 I.L.P., Easements, sec. 2,) and, when exercised in connection with the occupancy of other land, it is said to be appurtenant thereto. (*Willoughby* v. *Lawrence*, 116 Ill. 11.) An easement appurtenant passes by conveyance of the land to which it is annexed, even without being expressly mentioned, and the servient estate continues to be subject thereto until such right is terminated or abandoned. (*Messenger* v. *Ritz*, 345 Ill. 433; *Chicago Title and Trust Co.* v. *Wabash-Randolph Corp.*, 384 Ill. 78.) Ordinarily, such an easement is appurtenant not only to the dominant tract as a whole, but also to each and every part thereof, and is not extinguished by a division of the dominant estate but thereafter inures to the benefit of the owners of these several parts, (*Garrison* v. *Rudd*, 19 Ill. 558; 28 C.J.S., Easements, sec. 65; Restatement of the Law of Property, § 488,) nor is there any requirement that the dominant estate must touch or join the servient estate if both are clearly defined. (*Allendorf* v. *Daily*, 6 Ill.2d 577; *Goodwillie Co.* v. *Commonwealth Co.* 241 Ill. 42.) However, an easement appurtenant may not be extended by the owner of a dominant estate to accommodate other lands which he may own and for which the easement was not originally intended. *Miller* v. *Weingart*, 317 Ill. 179; 28 C.J.S., Easements, sec. 92.

In the present case it is clear that at the time of the original conveyance in 1925, Janvrin and Goodall intended to create a 30-foot easement appurtenant for the benefit of their respective properties. The southerly 15 feet of the Goodall tract was servient to the Janvrin property and the northerly 15 feet of the Janvrin tract was servient to the Goodall parcel. In addition thereto, the parties evidently intended that such easement should serve not only the

dominant tracts but should also accommodate the particular tracts from which they were carved, and there was evidence to indicate that such in fact occurred. Of course, a person cannot claim an easement over his own land, (*Walters* v. *Gadde,* 390 Ill. 518,) but he may arrange his property in such a manner that one portion thereof derives a benefit from another, and upon the severance of such common ownership, easements and servitudes arise which correspond with the benefits and burdens existing at time of sale. (*Frantz* v. *Collins,* 21 Ill.2d 446; *Sheehan* v. *Sagona,* 13 Ill.2d 341.) When Janvrin conveyed the remainder of lot 40 to Freeman, except tract A, said parcels not only retained their dominance as to the northerly half of the 30-foot easement, but also acquired a dominance over that portion of the southerly half of such easement included within the other parcel. And upon the subsequent sale of tract B by Freeman to Goodall, a similar easement by implication arose across tract B for the benefit of the balance of the Freeman property. Accordingly, when the Freeman land was subdivided in 1932, each lot thereof carried with it this dominant characteristic which passed with the land to Freeman's grantees. Furthermore, the plat of Freeman's subdivision clearly indicated the existence of the easement adjoining the subdivision on the north, and the conveyance of these lots having been made with reference to such plat, Freeman and his successors in interest are estopped to now deny the existence of such servitude. (*Marshall* v. *Lynch,* 256 Ill. 522.) In addition, it should be noted that the conveyance of tract A from Janvrin to Johnson, the reconveyance from Johnson to plaintiff, the conveyance of tract C to plaintiff, the instrument excepting tract E, and the conveyance of tract F all recited the existence of the 30-foot easement and purported to grant the use thereof. Under these circumstances, we believe that, except as hereinafter stated, the 30-foot easement originally created was appurtenant to and for the benefit

of the various properties situated within the original confines of lot 40. In this respect it is immaterial that certain of said parcels did not encompass any portion of the easement itself but merely adjoined (such as lot 2 of Freeman's subdivision, tract A, and tract E,) or were even noncontiguous, as were lot 1 of Freeman's subdivision and tract F. However, the easement was appurtenant only to the properties situated within lot 40, and was not intended to benefit neighboring tracts such as those situated in lot 41.

Having decided that an easement appurtenant did originally exist, we must now consider whether such right has been abandoned as contended by the defendants. It is the rule that mere nonuse will not constitute an abandonment of an easement created by grant, but that there must in addition thereto be circumstances showing an intention of the dominant owner to relinquish his right. (*Kurz* v. *Blume,* 407 Ill. 383.) Here, the evidence was quite conflicting as to the use of the easement. The plaintiff's evidence indicated a regular use commencing about 1930, but the defendants insisted that only their customers traveled across the easement prior to 1955. The chancellor saw and heard these witnesses and was in a better position to determine their credibility than is this court on review. Having found that no such abandonment did in fact occur, and there being nothing to indicate that such finding is against the manifest weight of the evidence, his determination will not now be disturbed. *Evangeloff* v. *Evangeloff,* 403 Ill. 118.

Finally, we are asked to decide the effect, if any, of plaintiff's release of easement delivered to defendants in 1942. An easement appurtenant to land may be extinguished by surrender or release from the dominant owner to the servient owner, (28 C.J.S., Easements, sec. 45; Restatement of the Law of Property, § 500,) but a release as to one dominant tract does not thereby terminate the right

as to other dominant tracts. (28 C.J.S., Easments, sec. 61.) At the time of such release from plaintiff to defendants, the former owned lot 1 in Freeman's subdivision and had just acquired tract C. Being the owner of these dominant tenements, plaintiff had the power to release such easements as to those tracts, and there being nothing to indicate that the release was to be effective only as to tract C, we hold that, insofar as lot 1 and tract C were concerned, its effect was to terminate the easement from the northwest corner of tract C to Blackhawk Boulevard. However, since tract A was then owned by Johnson, plaintiff had no power to release the easement as to this tract, and although subsequently acquired by Beloit Foundry Company, tract A is still entitled to the benefit of the easement. On the other hand, tract F, having been subsequently carved from lot 1, is denied the easement by reason of plaintiff's prior release even though it is now owned by Johnson. Johnson, of course, was not a party to the 1942 release and as to his other properties the release is of no effect.

In summary, we hold that the easement was originally created for the benefit of all parcels situated in lot 40, and that it was not extinguished by abandonment. The right to its use from Blackhawk Boulevard to the northwest corner of tract C was terminated, however, insofar as tract C, tract F, and lot 1 are concerned, by plaintiff's release of 1942. Nevertheless, such tracts do continue to enjoy that part of such easement running easterly from the northwest corner of tract C to the east line of lot 40. The easement was not released as to lot 2 and tract E, owned by Johnson, or as to tract A owned by Beloit Foundry Company. Nevertheless, it appears that defendants have for many years owned a concrete building just north of the easement in question. About 1950, mistakenly believing themselves to be the owners of the area now in dispute, defendants constructed an addition on the southerly side of

the concrete building which encroached upon the northerly portion of the original thirty-foot easement. It also appears from plaintiff's evidence relative to the regular use of such easement that the encroaching concrete building does not in fact deny or materially interfere with this use by the adjoining owners. However, the removal thereof would cast a definite hardship upon the defendants. A court of chancery may grant relief upon such terms as it deems equitable, and it will not require the doing of an act which will result in little benefit to one but great hardship to another. (*Remus* v. *Schwass,* 406 Ill. 63; *Horney* v. *The City of Springfield,* 12 Ill.2d 427; *Leitch* v. *Sanitary District,* 386 Ill. 433; *Bradecich* v. *Rivard,* 411 Ill. 214.) Under the facts of this case, we think it inequitable to require the removal of the concrete building which encroaches upon the subject easement, but in all other respects the owners of lot 2, tract E, and tract A are entitled to the unobstructed use of the entire easement from Blackhawk Boulevard to the east line of lot 40.

Accordingly, the decree of the circuit court of Winnebago County is affirmed insofar as it adjudged the existence of a perpetual easement appurtenant to the parcels as aforesaid and enjoined the obstruction thereof. But so far as the decree purports to grant an easement westerly from tract C for the benefit of tract C, tract F, and Lot 1; to extend the easement to properties situated outside the boundaries of the original lot 40; or to require the removal of the concrete building encroaching upon said way, it is reversed. The cause is further remanded to the circuit court of Winnebago County to modify and clarify its decree accordingly, and to take such further action as is not inconsistent with the views expressed in this opinion.

*Affirmed in part and reversed in part and remanded, with directions.*