DANIEL S. ELLIS, JR., *et al.*, Plaintiffs-Appellants, v. MICHAEL L. McCLUNG, Defendant-Appellee.

First District (1st Division) No. 1—95—1229

Opinion filed July 21, 1997.

Mayer, Brown & Platt, of Chicago (Mitchell D. Raup, Daniel J. Delaney, and David J. Franklyn, of counsel), for appellants.

Rosenthal & Schanfield, P.C., of Chicago (James M. Dash and Stephen P. Kikoler, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

This appeal arises out of a dispute over the status of certain easements on private property in Barrington Hills, Illinois. Daniel S. Ellis, Jr., and Mabel D. Ellis (Ellis plaintiffs) and Stephen Grant and Gretchen Grant (Grant plaintiffs) (cumulatively, plaintiffs) brought

an action against defendant, Michael L. McClung, to prevent him from constructing a driveway on certain easements situated between plaintiffs' property and defendant's property. Following a bench trial, the circuit court of Cook County entered judgment in favor of defendant, finding that certain easements, validly created in 1938, were never extinguished.

On appeal, plaintiffs contend that: (1) a 1938 deed did not create an express easement over the property owned by the plaintiffs for the benefit of the Fuller tract; (2) no implied easement arose over the plaintiffs' property for the benefit of the Fuller tract; (3) any easements over the Cummins and Ellis tracts for the benefit of the Fuller tract were extinguished through the doctrine of merger; and (4) the trial court erred in failing to rule on the reasonableness of McClung's use of the easement arrangement. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. The property at issue is located in what is now Barrington Hills, Cook County, Illinois, and is referred to in the record as follows: the Cummins tract (Grant Property); the Ellis tract; the Behrend tract; the Fuller tract; and the McClung tract. All of the tracts lie east of Brinker Road, and west of Caesar Drive,[1] between Lake Cook Road on the north and Otis Road on the south. (See plat, depicting the tracts and easements, included at the end of this opinion.)

In 1935, Walter Primley *et al.*, conveyed to Kenneth Smith the entire property as described above. In 1938, Kenneth and Cora Smith (the Smiths) were the common owners of all of the property described above. By a deed dated August 18, 1938, and recorded on August 26, 1938 (1938 Deed), the Smiths conveyed a portion of the property to William Hixon (Hixon). That portion conveyed to Hixon now constitutes approximately the upper two-thirds of the Ellis tract and the upper one-third of the Behrend tract, which is not at issue in this litigation.

The 1938 Deed created and reserved three contiguous easements for ingress and egress between Brinker Road and those parts of the property that were not conveyed to Hixon in the 1938 Deed:

> A. Paragraph (a) of the 1938 Deed reserves from the grant to Hixon an easement 30 feet wide along the northern border of the land conveyed to Hixon (referred to in the record as the "Yellow Easement");
> B. Paragraph (b)(1) of the 1938 Deed creates an easement 30

---

[1] Spelled alternatively "Ceasar" and "Caesar" in the record, Village of Barrington confirms an official spelling of "Caesar."

feet wide immediately to the north of the easement reserved in paragraph (a) (referred to in the record as the "Blue Easement"); and

C. Paragraph (b)(2) of the 1938 Deed creates an adjoining 60-foot easement to the west of the Yellow and Blue Easements, running west to Brinker Road (referred to in the record as the "Green Easement").

The 1938 Deed provided that the easements (1) expressly run with the land (paragraph (d)(1) of the 1938 Deed); and (2) are "for the purpose of passage, ingress and egress by foot, horse, wagon and/or automobile" to and from the dominant estate. Since 1938, the servient and dominant estates under the easements have been transferred to various owners.

At the time the easements were created in 1938, the westerly portion of the land that was subject to the three easements was partially improved with a gravel road, the easterly portion of the strip providing a dirt path that was used to travel between Brinker Road and an apple orchard that occupied part of what is called today the Fuller tract.

The 1938 Deed specifically provides that the Yellow Easement is to be used:

"*in common, however*, with the Grantee [Hixon] as owner of said real estate hereinabove conveyed and such of his grantees, successors in title, devisees, heirs and assigns as shall hereafter from time to time be or become owners of said real estate hereinabove conveyed, or of any part thereof." (Emphasis in original.)

The Yellow Easement was reserved to the grantors, the Smiths, "as present owners" of the benefitted real estate described in paragraph (a) of the 1938 Deed, which was defined as the property north of Otis Road and east of Brinker Road in section 3 of Barrington Township, title to which was in Kenneth and Cora Smith. The 1938 Deed conveyed a portion of the land that was conveyed to Kenneth Smith in a 1935 deed from Walter S. Primley *et al.* No part of the Fuller tract, including the parts of the apple orchard on it, were conveyed until the estate of Kenneth Smith quitclaimed it to David Chesrow *et al.* (Chesrow) in 1947. Chesrow severed ownership of the Fuller tract from ownership of their portion of the Cummins tract in 1948 when they conveyed the Fuller tract to Oliver Burnett.

The Blue Easement is 30 feet wide and its southern boundary is common with the northern boundary of the Yellow Easement. Together, the Blue and Yellow Easements form a 60-foot way, straddling the north property line of the grant to Hixon from its easterly boundary, where it abuts the Fuller tract to its westerly boundary, where it abuts the Green Easement.

The Green Easement is 60 feet wide north to south, running east to west between the westerly ends of the Blue and Yellow Easements and the center line of Brinker Road.

The Blue and Green Easements were to be used "in common with" other land owners. The 1938 Deed provides that the Blue and Green Easements granted to Hixon in paragraphs (b)(1) and (b)(2) were to be used:

> "*in common, however*, with the Grantors herein [the Smiths] as owners of said benefited real estate designated in paragraph (a) hereof and such of their grantees, successors in title, devisees, heirs and assigns as shall hereafter from time to time be or become owners of some, or of some part, of said benefited ownerships designated in paragraph (a) hereof, and with the lawful owners, tenants, occupiers and users from time to time of said benefited real estate designated in paragraph (a) hereof, or some part thereof." (Emphasis in original.)

By deed dated September 19, 1940, the Smiths purportedly conveyed certain additional real estate to William Hixon and Frederick Hodgdon (1940 Deed). The property conveyed constitutes the eastern one-half of what is now the Cummins tract. The southerly boundary of land conveyed in the 1940 Deed is contiguous with a substantial portion, but not all, of the northerly boundary of the land conveyed in the 1938 Deed. The 1940 Deed reserved from the conveyance an easement in favor of the grantors (the Smiths) over the land encumbered by the Blue Easement:

> "The Grantors reserve unto themselves, their heirs and assigns, out of the property hereinabove conveyed, an easement over a strip of land 30 feet in width ***."

The 1940 Deed also purportedly grants to Hixon and Hodgdon an easement over the land, previously conveyed to Hixon, encumbered by the Yellow Easement:

> "The Grantors in addition to the property hereinabove conveyed also grant unto the Grantees, their heirs and assigns, an easement over a strip of land 30 feet in width, the North line of said strip being identical with the South line of the strip hereinabove reserved by the Grantors."

However, it is not disputed that Hixon, not the Smiths, owned the real estate over which the Smiths purported to create the Yellow Easement, such land having been conveyed to Hixon in the 1938 Deed.

On August 14, 1991, plaintiffs filed their amended verified complaint for declaratory judgment and other relief against McClung, owner of the Fuller and McClung tracts, alleging that the easements reserved in the 1938 Deed were void and of no effect because a roadway had not been maintained on the property.

At trial, plaintiff Daniel Ellis testified that his family has lived at 29 Brinker Road in Barrington Hills since 1984. The Ellis property is defined as the Ellis tract, and Mr. Ellis accesses his property over the Green Easement from Brinker Road. The Ellis tract also includes the Yellow Easement. Mr. Ellis testified that the Grant plaintiffs live north of the Ellis tract, on the property defined as the Cummins tract. Mr. Ellis stated that the Grants own the underlying property that constitutes the Green Easement and that the Grants also access their property over the Green Easement from Brinker Road. The Grant plaintiffs also own the property underlying the Blue Easement.

Mr. Ellis testified that portions of the Blue and Yellow Easements are obstructed in part by heavy woods, railroad ties, rotted and broken fence rails, barbed wire, bushes, plants and other vegetation, and the cement foundation of an old silo, with a circumference of approximately 25 feet. The results of an age analysis performed on certain trees in the easement area revealed one tree that predated 1938.

Mr. Ellis also stated that a portion of the Blue and Yellow Easements is used regularly by the Barrington Hills Riding Club as a narrow horse trail and that members of the riding club will occasionally maintain and clear the trail with the property owners' permission. Mr. Ellis further stated that McClung has obstructed the trail so that the riding club can not ride across the Ellis tract.

Mr. Ellis stated that McClung was the first property owner of the Fuller tract who claimed that the Blue and Yellow Easements existed over the Ellis and Cummins tracts. He admitted that an easement for ingress and egress recorded on his property in the 1938 Deed is listed as a special exception on schedule B of his 1984 title policy.

Mabel Ellis testified that she first met McClung on September 25, 1991, when she noticed him pounding stakes into the ground at the end of the horse trail on the Cummins tract and placing flags on trees in the area. In response to her inquiry, McClung stated that he was marking trees in order to decide which ones to cut down for the purpose of constructing a driveway through the easement. Mrs. Ellis called the Barrington police, who arrived at the scene and wrote a report pertaining to a crime against property. Until that time, Mrs. Ellis was not aware of any easement on her property or the Cummins tract.

Stephen Grant testified that he was aware of the litigation pending against McClung when he contracted for the purchase of his home from the Cumminses in 1993. Mr. Grant stated that he was aware of neither that there was, in fact, an easement on the property nor that there was a dispute over the benefits of such an easement.

Robert Cummins, previous owner of the Cummins tract, testified that the horse trail is obstructed at either end with railroad ties. Adjacent to the horse trail are a variety of trees and shrubs, and at the eastern end of the trail is a culvert that runs under the horse trail, linking two ponds. Cummins stated that there were signs stating "no trespassing" posted at either end of the horse trail for a long time and that at one point members of the riding club replaced some old signs with new signs. During the time Cummins resided on the Cummins tract, no one drove any car or any other vehicle down the horse trail, and it would have been impossible to drive a car on the trail because of the obstructions.

Cummins stated that, upon first meeting McClung, McClung assured Cummins that he would not use Cummins' property to access Brinker Road. Later, Cummins learned that McClung wanted access to the Cummins and Ellis tracts.

McClung testified that he bought his home on the McClung tract in 1989. McClung first became aware of the Blue, Green and Yellow Easements on the Ellis and Cummins tracts in 1990, when he negotiated for the purchase of the Fuller tract from Douglas and Ruth Fuller. McClung stated that he never took any steps to build a roadway on the easements; that he purchased the Fuller tract for investment purposes; and that he has been trying to sell the property for $3\frac{1}{2}$ years but has been unable to do so because of the lawsuit. McClung denied telling police officers that he intended to build a driveway on the easements in September 1991.

Herbert Walbaum testified that he has lived in the Barrington Hills area since his birth in 1910 and that he has lived at 411 Caesar Drive since June 1966. Walbaum stated that as a real estate developer in Barrington Hills, he created lot 19, the Fuller and McClung tracts, as the Dorvillee Hills subdivision in the 1960s. Originally, the Fuller tract was part of a 40-acre apple orchard that was established in 1916.

Walbaum examined a 1938 aerial photograph taken of the property and identified the Cummins tract and the apple orchard as farmland, which was originally all part of the Otis farm. Near the Cummins and Ellis tracts was a gravel road path extending east from Brinker Road. Walbaum stated that, in 1938, the path stopped at an old farmhouse. The only trees located in the area were in the orchard, off to the east in the Fuller tract. Walbaum stated that the path was 10 to 12 feet wide; wide enough for car travel in 1938.

William Fuller testified that he lived in the house on the McClung tract from 1971 to 1978 with his parents, Douglas and Ruth Fuller. Douglas and Ruth also owned the adjoining Fuller tract. Wil-

liam stated that he accessed Brinker Road from the bridle path when he lived on the McClung tract, walking right through the Blue Easement to reach the Green Easement, at which point there existed gravel driveways. William knew that the route to Brinker Road was over other people's property, but he believed he had the right to use the horse trail based on what his father described to him as an easement that went along with the Fullers' property. William stated that no one ever tried to stop him from walking on the horse trail, that he never observed any signs reading "no trespassing," and that he last walked on the trail in the summer of 1986.

The trial court entered judgment in favor of defendant on March 8, 1995, finding as follows: (1) plaintiffs failed to prove that the easements created in paragraphs (a), (b)(1), and (b)(2) of the 1938 Deed were extinguished through adverse possession or abandonment; (2) the three easements created in the 1938 Deed were validly created; and (3) the three easements were not extinguished by the doctrine of merger.

On April 5, 1995, plaintiffs filed their timely notice of appeal of portions of the order of March 8, 1995. Plaintiffs did not appeal from the trial court's ruling regarding abandonment or adverse possession.

Preliminarily, plaintiffs state that the trial court's rulings regarding the easements are subject to *de novo* review by this court as questions of law. Defendant points out that not all of the issues raised by plaintiffs are questions of law but, rather, some are questions of fact and therefore require reversal only if the trial court's determination was against the manifest weight of the evidence. *Harris Trust & Savings Bank v. Barrington Hills*, 133 Ill. 2d 146, 157, 549 N.E.2d 578 (1989). We will address each issue raised on appeal according to the appropriate standard of review.

Initially, plaintiffs contend that the 1938 Deed failed to create any express easements over the property owned by the Grant and Ellis plaintiffs for the benefit of the Fuller tract, citing numerous reasons in support of their contention.

First, plaintiffs contend that McClung failed to prove by clear and convincing evidence that the easements were created for the benefit of the Fuller tract under the terms of the 1938 Deed. Plaintiffs argue that paragraph (b) of the 1938 Deed fails to provide that the Green and Blue Easements were granted for the benefit of the Fuller tract or any other land owned in 1938 by the Smiths; rather, plaintiffs argue that the 1938 Deed granted the Blue and Green Easements to Hixon for the benefit of the Hixon property only, not the Fuller tract.

The record shows that the 1938 Deed created easements for the

benefit of the entire property north of Otis Road and east of Brinker Road. This property includes the Fuller tract. Therefore, the trial court properly determined that the Fuller tract is an intended beneficiary of the Green, Yellow and Blue Easements created in the 1938 Deed.

Plaintiffs further contend that: (1) Smith could not have created the Green and Blue Easements for the benefit of the Fuller tract because a landowner cannot have an easement on his own property, and Smith owned the land underlying the Green and Blue Easements; and (2) the 1940 Deed shows that neither Smith nor Hixon believed that the 1938 Deed had reserved the Blue and Green Easements for the benefit of the Fuller tract.

In determining that the easement arrangement was valid, the trial court relied on *Beloit Foundry Co. v. Ryan*, 28 Ill. 2d 379, 192 N.E.2d 384 (1963). In that case, Janvrin was the common owner of lot 40. Janvrin conveyed a parcel of lot 40 to Goodall in 1925; this parcel became the Goodall tract. The deed from Janvrin to Goodall created two separately described but contiguous easements: one easement was reserved for the benefit of the property retained by Janvrin, over the south 15 feet of the property granted to Goodall; and the second easement was granted, for the benefit of the property conveyed, over the north 15 feet of the property retained by Janvrin. Although the record did not show that Goodall had signed the deed, the deed provided in pertinent part that, "[i]t is also mutually agreed between the parties hereto that a private alley is hereby created thirty feet wide" over the two easements. 28 Ill. 2d at 381. Our supreme court determined that Janvrin and Goodall intended that the easement should serve not only the dominant tracts of land, "but should also accommodate the particular tracts from which they were carved, and there was evidence to indicate that such in fact occurred." 28 Ill. 2d at 389. The court stated:

"Of course, a person cannot claim an easement over his own land, [citations] but he may arrange his property in such a manner that one portion thereof derives a benefit from another, and upon the severance of such common ownership, easements and servitudes arise which correspond with the benefits and burdens existing at time of sale." *Beloit Foundry*, 28 Ill. 2d at 389.

Janvrin subsequently conveyed most of the land retained by him to Freeman. Freeman later divided and sold most of his land, including certain parts which were encumbered by the easements granted to Goodall. Beloit Foundry acquired several parcels of land, two parcels of which underlie the easement. Eventually, Goodall's successors, the Ryans, acquired fee title to all of Goodall's land and a

substantial length of the southerly easement. The Ryans then attempted to obstruct the use of the easement by Beloit Foundry by claiming that the divided tracts were not benefitted by the easements, including the southerly easement granted by Janvrin, in favor of the Goodall property, over Janvrin's property.

The court found that Beloit Foundry Company was benefitted by the entire easement arrangement created in the 1925 deed from Janvrin to Goodall. The court stated:

"When Janvrin conveyed the remainder of lot 40 to Freeman, except tract A, said parcels not only retained their dominance as to the northerly half of the 30-foot easement, but also acquired a dominance over that portion of the southerly half of such easement included within the other parcel. And upon the subsequent sale of tract B by Freeman to Goodall, a similar easement by implication arose across tract B for the benefit of the balance of the Freeman property. Accordingly, when the Freeman land was subdivided in 1932, each lot thereof carried with it this dominant characteristic which passed with the land to Freeman's grantees. Furthermore, the plat of Freeman's subdivision clearly indicated the existence of the easement adjoining the subdivision on the north, and the conveyance of these lots having been made with reference to such plat, Freeman and his successors in interest are estopped to now deny the existence of such servitude." *Beloit Foundry*, 28 Ill. 2d at 389.

■ In the present case, the 1938 Deed clearly shows that the Smiths and Hixon agreed to an express easement to benefit the balance of the Smiths' land, which included the Fuller tract. Paragraphs (b)(1) and (b)(2) of the 1938 Deed clearly create the three easements for the benefit of the Smiths, as well as for the successive owners of any part of their land:

"*in common, however*, with the Grantors herein as owners of said benefited real estate designated in paragraph (a) hereof and such of their grantees, successors in title, devisees, heirs and assigns as shall hereafter from time to time be or become owners *of some, or of some part, of said benefited ownerships* designated in paragraph (a) hereof [(emphasis added)]."

Plaintiffs attempt to distinguish *Beloit Foundry* by arguing that *Beloit Foundry* is a case about an "implied easement" as opposed to an "express easement." Plaintiffs' argument is unavailing. In *Beloit Foundry*, the supreme court explicitly found that express statements in the 1925 deed created an easement intended to serve the dominant tracts and the subservient tracts of the lots at issue.

Plaintiffs further contend that the 1940 Deed shows that neither the Smiths nor Hixon "believed" that the 1938 Deed had reserved

Blue and Green Easements for the benefit of the Fuller tract. Plaintiffs argue that the Smiths' reservation of an additional easement over the Blue Easement for their benefit in the 1940 Deed is an indication that the Smiths, in the 1938 Deed, had merely retained the right to reserve easements in the future but did not create any arrangement for their respective successors in title.

The record shows that the 1940 Deed clearly grants to Hixon and Hodgdon another easement over the Yellow Easement, the Yellow Easement having been conveyed to Hixon in the 1938 Deed.

Plaintiffs also argue that the purpose of the Easements created in the 1938 Deed is allegedly different from the purpose of the easements in *Beloit Foundry.*

The purposes of the easements in *Beloit Foundry* have no legal significance to the purpose of the Easements in the present case. In any event, both the easements here and in *Beloit Foundry* are essentially the same for the same purpose: ingress and egress between private land and a public road.

Plaintiffs argue that the purposes of the Blue and Green Easements were limited to ingress and egress between the land conveyed to Hixon and the 1938 Deed. Plaintiffs cite to the so-called "common use" clause of the 1938 Deed, paragraph (d)(2), which creates the easements

> "for the purpose of passage, ingress and egress by foot, horse, wagon and/or automobile, which passage, ingress and egress shall, in the case of said easement so reserved in paragraph (a) hereof [Yellow Easement], relate to such passage, ingress and egress to and from said benefited real estate designated in paragraph (a) hereof, or to or from some part of that real estate, and shall as to the two easements granted in clauses 1 and 2 of paragraph (b) hereof, respectively, relate to such passage, ingress and egress to and from said real estate hereinabove to the Grantee herein."

Plaintiffs argue that paragraph (d)(2) establishes that: (1) the Yellow Easement was established solely for ingress and egress between Brinker Road and the land described in paragraph (a) (which property, in fact, includes the Fuller tract), or the land retained by the Smiths; and (2) ingress and egress over the Blue and Green Easements was solely between Brinker Road and the land conveyed to Hixon.

Contrary to plaintiffs' contention, the "common use" clauses in paragraph (d)(2) of the 1938 Deed show that the Smiths agreed to give Hixon, and the successors to all or any part of his land, the right to use the Yellow Easement in common with the Smiths. The arrangement itself suggests that Hixon and his successors would have

no reason to travel between Brinker Road and the land retained by the Smiths.

Similarly, in the common use clause after paragraph (b)(3) of the 1938 Deed, the Smiths retained for themselves, and the successors to all or any part of their land, the right to use the Blue and Green Easements in common with Hixon:

> "*in common, however*, with the Grantors herein [the Smiths] as owners of said benefited real estate designated in paragraph (a) hereof and such of their grantees, successors in title, devisees, heirs and assigns as shall hereafter from time to time be or become owners of some, or of some part, of said benefited ownerships designated in paragraph (a) hereof." (Emphasis in original.)

We agree with defendant that a logical interpretation of this common use clause is that the Smiths and Hixon, anticipating that the land might be divided in the future, agreed that the Smiths and any successors to part of their land (*i.e.*, defendant) could use the Blue and Green Easements to access their part of such land, including the Fuller tract.

Finally, plaintiffs contend that subsequent deeds in the Smiths' chain of title created different easements, each with different benefitted properties and for expressly different purposes. Therefore, plaintiffs argue that the 1938 Deed failed to create any "express easements," unlike those created in *Beloit Foundry*.

*Beloit Foundry* holds that an easement that runs with the land passes by a conveyance of the land to which it is annexed without having to be mentioned in subsequent deeds. *Beloit Foundry*, 28 Ill. 2d at 388. Therefore, whether or not subsequent deeds in defendant's chain of title mention the easements in the 1938 Deed, those easements described in paragraph (d)(1) of the 1938 Deed, which expressly run with the land, passed to defendant. Nevertheless, the record reveals a complete chain of title of all of the relevant tracts of land, showing that certain of the deeds do, in fact, mention the easements, thereby creating an independent ground for upholding the continuing existence of the easements.

The record therefore shows that the Yellow, Blue and Green Easements continue to be valid.

Next, plaintiffs contend that even if the Fuller tract was benefited by the easements granted to Hixon in the 1938 Deed across the Cummins tract, those easements were extinguished through the doctrine of merger.

■ The merger of estates is a question of intent. *Chicago Title & Trust Co. v. Wolchinovesky*, 326 Ill. App. 194, 200, 61 N.E.2d 264, 266 (1945). A merger occurs when the dominant (benefitted) estate and

the servient (burdened) estates are owned by the same person, thereby extinguishing an easement by virtue of unity of title and possession, given that one has no need of an easement over one's own property. *Seymour v. Harris Trust & Savings Bank*, 264 Ill. App. 3d 583, 597, 636 N.E.2d 985 (1994). Ownership of both the dominant and servient estates must be identical in duration, quality, and all other circumstances of right. *Smith v. Roath*, 238 Ill. 247, 252-53, 87 N.E.2d 414, 416 (1909). The party asserting merger has the burden of proving a merger at trial. *Seymour*, 264 Ill. App. 3d at 599.

■ In the present case, plaintiffs argue that the Green and Blue Easements were extinguished as to the Fuller tract upon execution of the 1938 Deed, because the Smiths owned all of the land affected by the easements described in paragraphs (b)(1) and (b)(2). Plaintiffs continue that there was complete unity of title between the Fuller tract and the servient estate for the easement granted in paragraph (b)(2) of the 1938 Deed in 1947, when Smith conveyed all of that property to Chesrow *et al.*, thereby extinguishing the Green Easement as to the Fuller tract. Plaintiffs further argue that Harvey Branigar's simultaneous ownership of the Cummins and Fuller tracts between 1958 and 1963 also extinguished the Green and Blue Easements as to the Fuller tract.

The record shows that the trial court found no merger as to the Blue and Green Easements because one owner did not also own all of the servient estate to the Yellow Easement. The trial court stated:

"Since the 1938 Deed, no person has held complete and coextensive ownership of the Fuller Tract, the former Hixon property now comprising the Ellis and Behrend Tracts and the Grant Tract."

The record further shows that while Harvey Branigar and his wife, Sarah, owned the Cummins tract as joint tenants, Harvey Branigar alone owned the Fuller tract. Although subject to Sarah Branigar's marital interest, Harvey Branigar's fee title to the Fuller tract was not identical in duration, quality and all other circumstances of right to his undivided one-half interest as a joint tenant in the Cummins tract. Therefore, the easements could not merge into the fee title of any property.

The record further shows that the easements were not extinguished. The 1971 deed of the Fuller tract from Harvey and Sarah Branigar to Douglas and Ruth Fuller expressly refers to the easements created in the 1938 and 1940 Deeds. In addition, William Fuller testified that he used the easements to access Brinker Road and that his father, Douglas, described the easements to him. The conveyance of the Fuller tract to defendant also specifically refers to the easements in the 1938 Deed.

By virtue of the facts in the record, plaintiffs have failed to show that a merger extinguished the easements.

■ Lastly, plaintiffs contend that the trial court erred in failing to rule on what "reasonable use" may be made of the easements. Because the record shows that this issue was not raised at trial, it is not properly before this court on appeal.

For the reasons stated above, we therefore affirm the judgment of the trial court.

Affirmed.

BUCKLEY and GALLAGHER, JJ., concur.

PLAT OF PROPERTY AND EASEMENTS[++]

[Not to Scale]
(++ Diagram taken from page 2 of Appellants' brief for information purposes only.)

| | |
|---|---|
| 1940 Conveyance to Hixon & Hodgdon | |
| 1938 Conveyance to Hixon | |
| Current Property Boundaries | |
| Easement Boundaries | |
| * | Blue Easement |
| ** | Yellow Easement |
| *** | Green Easement |

(Colors as depicted in Appellants' diagram)